UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS
(Eastern Division)

| In re: | Chapter 11 |
|---|---|
| FRC, LLC, | Case No. 11-19466 |
| Debtor. | |

**DEBTOR'S MOTION FOR ORDER (I) AUTHORIZING THE SALE OF CERTAIN BUSINESS ASSETS FREE AND CLEAR OF ALL LIENS, CLAIMS, INTERESTS AND ENCUMBRANCES, (II) AUTHORIZING THE ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS IN CONNECTION THEREWITH AND (III) GRANTING RELATED RELIEF**

FRC, LLC ("FRC" or the "Debtor"), the debtor and debtor-in-possession in the above-captioned bankruptcy case, hereby moves this Court, pursuant to Sections 105, 363 and 365 of Chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101 et seq. (the "Bankruptcy Code"), Rules 2002, 6004 and 6006 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and Rules 2002-1, 2002-5 and 6004-1 of the Local Bankruptcy Rules of the United States Bankruptcy Court of the District of Massachusetts (the "Local Rules"), for the entry of an order (a) authorizing the Debtor to effectuate the Asset Purchase Agreement (the "APA") with Asset International, Inc. ("Purchaser") (b) authorizing the sale of certain of the Debtor's assets related to its asset management industry report business and all other items defined as "Acquired Assets" pursuant to the APA (the "Sale") by private sale, free and clear of all liens, claims, interests and other encumbrances, (c) authorizing the Debtor to assume and assign to Purchaser certain executory contracts in conjunction with the proposed Sale, and (d) for

related relief.[1] Except for those liabilities of the Debtor expressly assumed by Purchaser pursuant to the APA, all liens, claims, interests and other encumbrances shall attach to the proceeds of the proposed Sale to the same extent, and with the same priority and validity, that existed on the Petition Date (as defined below).

As set forth in the APA, Purchaser has agreed, subject to certain adjustments, to pay $500,000 for the Acquired Assets. Subject to Bankruptcy Court approval, FRC and the Purchaser have executed the APA. The APA provides the estate and prospective counter-offerors, through the APA, with a definitive agreement that will govern the terms of the Sale of the Acquired Assets. Consummation of the APA will provide the Debtor's bankruptcy estate with a significant recovery for the Acquired Assets that will maximize the value of the Debtor's estate. Accordingly, the Debtor has contemporaneously filed a separate motion (the "Sale Procedures Motion")[2] requesting, among other things, on an expedited basis, (a) the approval of the expense reimbursement and the break-up fee for the Purchaser, as well as, (b) certain sale procedures (the "Sale Procedures") and (c) procedures regarding the assumption and assignment of executory contracts.

In further support of this motion (the "Sale Motion"), the Debtor states as follows:

### JURISDICTION AND VENUE

1.   This Court has jurisdiction over this Sale Motion pursuant to 28 U.S.C. §§ 1334 and 157.

---

[1] Capitalized terms not otherwise defined in this motion shall have the meanings ascribed to them in the APA.

[2] The full title of the Sale Procedures Motion is *Motion by Debtor for Approval of (A) Sale Procedures, (B) Break-up Fee and Expense Reimbursement Provisions and (C) (1) Procedures for Assumption and Assignment of Executory Contracts and (2) Form of Notice of Contract Assumption and Assignment and Cure Costs in Connection with Sale of Certain of the Debtor's Assets Free and Clear of All Liens, Claims, Interests and Encumbrances.*

607407-v1                                                         2

2. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (N) and (O). Venue in this district is proper pursuant to 28 U.S.C. § 1409(a).

3. The statutory predicates for the relief sought in this Sale Motion are Sections 105, 363 and 365 of the Bankruptcy Code, Federal Rule of Bankruptcy Procedure 2002, 6004 and 6006 and Local Rules 2002-1, 2002-5 and 6004-1.

### THE PROPOSED SALE[3]

4. Subject to the approval of the United States Bankruptcy Court for the District of Massachusetts (the "Bankruptcy Court"), the Debtor entered into the APA with Purchaser. A copy of the APA is attached hereto as Exhibit A.

**A.    The Assets to be Purchased And The Purchase Price**

5. The Acquired Assets are comprised of certain assets specifically identified in the APA and on Exhibit A thereto and are owned and held by the Debtor and associated solely with the following business segments of the Debtor's business being acquired: (i) Investments-Mutual Funds (with the exception of the Mutual Fund Quarterly Market Review and the Mutual Fund Quarterly Sales Review), (ii) Investments-Subadvisory, (iii) Alternatives, (iv) 529 College Savings, and (v) Monitor (the "Business"); (b) the Debtor's rights under identified customer contracts related to the Business for periods on and after the Closing (the "Assumed Contracts"); and (c) the other assets as more particularly described on Exhibit A of the APA. All other assets of the Debtor not identified as Acquired Assets pursuant to the APA shall remain as property of the Debtor.

---

[3] The descriptions in this Sale Motion of the proposed Sale, the APA, and the related documents (collectively the "Sale Documents") are summaries only and are not meant to be substitutes for the Sale Documents themselves, which may contain additional terms and conditions. In the event of a conflict between this Sale Motion and the Sale Documents, the Sale Documents shall control.

6. The purchase price for the Acquired Assets (the "Purchase Price") is $500,000 subject to reduction at Closing (i) on a dollar for dollar basis to the extent that the "Actual Transaction Amount" is less than the "Projected Transaction Amount" where the "Actual Transaction Amount" is the amount paid or payable to the Debtor arising from customer transactions with the FRC business segments that are included in the Business that have been either invoiced, or for which there has been issuance and acceptance of a sales order or acknowledgment and in each case evidenced by a written or electronic customer acceptance or acknowledgement (the "Customer Transactions") during the period between September 1, 2011 and the Closing (the "Adjustment Period") and the "Projected Transaction Amount" is the amount projected to be paid or payable on account of Customer Transactions over the Adjustment Period pursuant to Section 2.5(c)(i) of the APA and (ii) by an amount equal to fifty percent (50%) of the sum of (A) the amount of accounts receivable of the Debtor existing at Closing, which arose from Customer Transactions during the period between the Petition Date and the Closing (the "Interim Period") and (b) any cash paid to Seller prior to Closing for such Customer Transactions during the Interim Period.

7. Purchaser has made a good faith, refundable deposit of $50,000.

8. The liabilities of the Debtor to be assumed by Purchaser (the "Assumed Liabilities") consist *solely* of those liabilities specifically identified for assumption by the Purchaser in the APA and chiefly of the post-Closing performance obligations of the Debtor under the executory contracts to be assumed and assigned pursuant to the Sale.

9. Except for the Assumed Liabilities, the APA requires that the Debtor deliver the Acquired Assets free and clear of all liens, claims, interests and other encumbrances pursuant to Sections 363 and 365 of the Bankruptcy Code.

B. **Executory Contracts to be Assumed**

10. The APA requires the Debtor to assume and assign to Purchaser the Assumed Contracts (set forth on <u>Exhibit A</u> of the APA). The APA further provides that all prepetition cure amounts due under the Assumed Contracts ("Cure Costs") shall be paid by the Debtor on or before the Closing. Purchaser shall have no liability for such Cure Costs. The Assumed Contracts and the Cure Costs are listed on Exhibit B to the Sale Procedures Motion (which Exhibit will be updated prior to the Sale Hearing as provided in the Sale Procedures Motion). Any executory contracts or unexpired leases not specifically set forth on <u>Exhibit A</u> of the APA will not be an assumed contract and will not be assigned to Purchaser.

11. In the Sale Procedures Motion filed contemporaneously with this Sale Motion, the Debtor is seeking, among other things, approval of procedures regarding the assumption and assignment of the Assumed Contracts including: (a) notice to counter-parties of the Assumed Contracts of the assumption and assignment of the Assumed Contracts, (b) notice of the proposed Cure Costs with respect to the Assumed Contracts, and (c) objection procedures and notice of the objection deadlines with respect to the proposed Cure Costs.

12. The Debtor is confident that Purchaser will be able to demonstrate adequate assurance of future performance with respect to the Assumed Contracts.

**C.   Conditions to Closing**

13.   The Purchaser's obligation to close the proposed Sale is conditioned, among other things set forth in the APA, on:

   a.   entry of an order granting postpetition financing for the Debtor on an interim basis by October 7, 2011;[4]

   b.   entry of an order granting the relief sought in the Sale Procedures Motion in form and substance reasonably satisfactory to the Purchaser by October 18, 2011;

   c.   entry of an order granting the Sale Motion and approving the Sale in form and substance reasonably satisfactory to the Purchaser by November 10, 2011;

   d.   there shall not have occurred a "material adverse change" as described in Section 8.7 of the APA;

   e.   the four "Key Employees" shall have accepted employment with the Purchaser and their employment with the Debtor shall have been terminated as set forth in Section 8.8 of the APA; and

   f.   the Sale shall have closed no later than November 25, 2011.

14.   The APA provides that the Closing shall occur no later than fifteen (15) calendar days following the entry by the Bankruptcy Court of the Sale Approval Order, provided that the Sale Approval Order is a Final Order, unless the Sale Approval Order contains a finding pursuant to Bankruptcy Code Section 363(m) as to Purchaser's good faith and further provides that the Sale Approval Order shall be effective immediately upon entry notwithstanding Fed. R. Bankr. P. 6004(h) & 6006(d), in which case the closing shall occur no later than two (2) business days following the entry of the Sale Approval Order.

---

[4] The Debtor has filed the *Motion of Debtor and Debtor-in-Possession for (A) Authority to Borrow pursuant to 11 U.S.C. §364, and (B) Related Relief* contemporaneously herewith (the "DIP Financing Motion").

### D. Purchaser's Ability to Consummate the Sale

15. Purchaser's obligations under the APA are not subject to any financing contingency.

16. The Debtor believes that Purchaser will be able to consummate the transaction contemplated by the APA.

17. The APA is the product of arms' length negotiations between the Debtor and Purchaser. The Debtor believes that Purchaser is a good faith purchaser for the purposes of Section 363(m) of the Bankruptcy Code.

### E. Marketing and Sale of the Property

18. Commencing in mid 2010, the Debtor initiated a process to explore the strategic alternatives and opportunities with respect to its business. The Debtor determined to pursue discussions with Purchaser, and permitted Purchaser to undertake extensive diligence with respect to the Debtor's operations. Simultaneously with the due diligence process, the Debtor and Purchaser engaged in extensive negotiations with respect to the terms of an acquisition of the Acquired Assets, including the APA and related documentation. The result of these efforts is embodied in the APA that has no financing contingency or requirement for further due diligence and contains a committed Purchase Price.

19. Contemporaneously with the filing of this Sale Motion, the Debtor is filing the Sale Procedures Motion seeking Bankruptcy Court approval for Sale Procedures with respect to the Sale by which interested parties may submit higher and better offers for the Acquired Assets, as well as approval for the Expense Reimbursement and Break-Up Fee. The Debtor proposes to provide notice of the Sale, *inter alia*, to (i) all parties who, in the past year, expressed in writing to the Debtor an interest in the Acquired Assets or the Debtor's business, (ii) all parties who are

known or reasonably believed to have asserted a lien, encumbrance, claim or other interest in the Acquired Assets, and (iii) all secured and unsecured creditors of the Debtors.

20. Potential qualified counter-offerors may contact the Debtor's representatives for further information regarding the Sale process. Materials that the Debtor believes are necessary to conduct due diligence for the purpose of making counter-offers will be made available upon request.

F.  **Protections for the Purchaser as Stalking Horse Bidder**

21. The Sale Procedures Motion also seeks Bankruptcy Court approval for certain customary protections for the Purchaser because it will be acting as a "stalking horse" bidder. The APA provides, in the event that Purchaser is not ultimately the successful bidder and in consideration of Purchaser's having expended considerable time and expense in connection with the negotiation of the APA and Purchaser's due diligence investigation of the Debtor's business and the Acquired Assets that Purchaser is entitled to reimbursement of its actual, out-of-pocket costs and expenses (including professionals' fees) actually incurred by Purchaser in connection with the APA and the related transactions in an amount not to exceed $20,000 (the "Expense Reimbursement"). In addition, Purchaser is entitled to a break-up fee equal to $20,000 (the "Break-Up Fee"). The Expense Reimbursement and Break-Up Fee are subject to Court approval and payable in the event an Alternative Transaction (as defined in the Sale Procedures Motion) is consummated resulting in the sale of the Acquired Assets to a third party.

BACKGROUND

22. On October 3, 2011 (the "Petition Date"), FRC filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code in the Bankruptcy Court. The Debtor continues to operate as a debtor-in-possession pursuant to Sections 1107 and 1108 of the Bankruptcy Code.

A.  **The Debtor And Its Ownership**

23.  FRC is a Delaware limited liability company that prepares, markets and sells asset management industry research reports, including reports on investment industry trends and financial product performance, to investment and asset management professionals.

24.  FRC was established in a November 2008 transaction (the "2008 Acquisition") in which it purchased the assets of the Financial Research Corporation from Citi Fund Services, Inc. ("Citi") for a purchase price of $3 million. In payment of the purchase price, Citi took back a promissory note from FRC in the face amount of $2.15 million which obligation was secured by substantially all FRC's assets.

25.  The membership interests in FRC are held 77% by Mercatus RC, LLC ("Mercatus RC"). Robert Hedges ("Hedges") and Teresa Epperson ("Epperson") directly hold approximately 3% and 1% of the membership interests respectively in the Debtor. Hedges and Epperson are the managing members of FRC. The remainder of the membership interests in FRC are held by individual investors and management personnel none of whom hold more than 5%. The membership interests in Mercatus RC are held 20% by Mercatus LLC and 40% by Hedges and 40% by Epperson. The membership interests in Mercatus LLC were, until recently, held approximately 67% by Hedges and 33% by Epperson.

B.  **The Debtor's Financial Difficulties**

26.  FRC had revenue of approximately $3.3 million in 2009 and $2.7 million in 2010, but has not been profitable, posting losses on net ordinary income of approximately $1.3 million for 2009 and approximately $640,000 for 2010. For 2011, FRC has had year-to-date revenues of approximately $1.5 million and a net ordinary income loss of approximately $600,000. The Debtor incurred significant start-up costs in 2009 related to the hiring of a new management

team, investments in technology and legal and accounting fees. The Debtor's business was severely affected by the recession commencing in 2008 and the resulting uncertainty in the financial markets. Equity markets were hit hard and have been slow to recover, with continued high volatility. With equity markets depressed and volatile, the Debtor's customers, brokerage firms and asset managers, have aggressively slashed discretionary spending, cutting research budgets. Margin pressures forced industry consolidation (*e.g.* Ameriprise Financial Inc. merged with Columbia Management, both FRC customers) which permanently reduced the number of large buyers in FRC's traditional market. The Debtor has suffered an 82% decline in recurring relationship revenues since 2008. The Debtor also had difficulty in obtaining working capital to build out its business. Certain key employees were also lost over this period with a negative impact on revenues.

### C. The Debtor's Assets And Liabilities

27. The Debtor's assets consist primarily of good will that had a recent book value of approximately $2.8 million and secondarily of accounts receivable and other current assets with a recent book value of approximately $170,000.

28. As of the Petition Date, only one creditor, Coactive Capital Partners, Inc. ("Coactive"), had filed a financing statement with respect to the Debtor's property asserting a security interest in certain leased computer and related equipment. According to the Debtor's books and records, Coactive has a prepetition claim of approximately $16,000.

29. In addition to its obligation to Coactive, the Debtor has scheduled approximately $4.3 million in unsecured obligations. Of this amount, approximately $3.5 million is owed to insiders: approximately $1.7 million is owed to Mercatus RC for loans made to the Debtor since the 2008 Acquisition, another approximately $1.5 million is owed to Mercatus RC for

contribution on account of its payment in August 2011 of the Debtor's obligation to Citi on the promissory note issued in connection with the 2008 Acquisition, approximately $275,000 is owed to Hedges and Epperson. The balance of the Debtor's unsecured debt, approximately $810,000, constitutes debt associated with the Debtor's business operations.

D.   **The Debtor's Wind Down Plan**

30.   Commencing in mid 2010, the Debtor initiated a process to explore the strategic alternatives and opportunities with respect to its business. As a result of that process, the Debtor determined to wind down its operations in conjunction with the proposed Sale of its most valuable assets. Prior to the Petition Date, the Debtor terminated eight employees. Four other "Key Employees" will continue to work for the Debtor over the Interim Period from the Petition Date through the consummation of the Sale and will thereafter be employed by the Purchaser (and simultaneously terminated by the Debtor). Another four employees will continue to work for the Debtor for part of the wind down period to assist with the wind down and Sale.

31.   The Debtor expects to collect postpetition the accounts receivable generated from the prepetition sales of financial reports in the amount of approximately $80,000. The Debtor intends to generate new sales of certain prepetition reports not in the product categories subject to the Sale during the Interim Period and, as a result, collect an additional $55,000. The Debtor anticipates generating new sales during the Interim Period for financial reports in the product categories subject to the Sale (*i.e.* related to the Business) in the amount of approximately $252,000. The Purchaser will receive a 50% credit against the Purchase Price for the accounts receivable generated for the Business during the Interim Period and the proceeds thereof paid prior to the closing. The Debtor, however, is entitled to collect all the accounts receivable generated on sales during the Interim Period.

32. The Debtor believes that the collection of accounts receivable as described above in conjunction with receipt of the Purchase Price pursuant to the sale will maximize the value of the Debtor's estate and the recovery for unsecured creditors.

33. Subsequent to the Sale, the Debtor will file a liquidating plan of reorganization that will provide for the distribution to creditors of the proceeds from the Sale and the collection of accounts receivable. The Debtor has preliminarily obtained the agreement of Mercatus RC to voluntarily subordinate its claims (but not the advances under the DIP Credit Facility)[5] to the claims of third party creditors in consideration for which it would be granted a customary release pursuant to the plan.

### REQUEST FOR RELIEF

**A.    Authority to Sell Assets**

34. The Debtor requests authority to execute the APA and sell the Acquired Assets pursuant to Bankruptcy Code Sections 105 and 363(b). The Bankruptcy Code requires court approval for the use, sale or lease of a debtor's assets outside the ordinary course of business. *See* 11 U.S.C. § 363. In pertinent part, Section 363(b)(1) provides that a "trustee, after notice and a hearing, may use, sell, or lease other than in the ordinary course of business, property of the estate." 11 U.S.C. §363(b)(1).

35. Courts have approved a sale of a debtor's assets if the proposed transaction represents a reasonable business judgment on the part of the debtor. *See In re Martin*, 91 F.3d 389, 396 (3d Cir. 1996); *In re Lionel Corp.*, 722 F.2d 1063, 1070 (2d Cir. 1983); *see also Stephens Indus. v. McClung*, 789 F.2d 386, 390 (6th Cir. 1986); *In re Thomas McKinnon Securities, Inc.*, 120 B.R 301 (Bankr. S.D.N.Y. 1990).

---

[5] Pursuant to the DIP Financing Motion, the Debtor is seeking postpetition financing from Mercatus RC.

36. Courts typically consider the following factors in determining whether a proposed sale satisfies this standard: (a) whether a sound business justification exists for the sale; (b) whether adequate and reasonable notice of the sale was given to interested parties; (c) whether the sale will produce a fair and reasonable price for the property; and (d) whether the parties have acted in good faith. *See In re Delaware & Hudson Ry.*, 124 B.R. 169, 176 (D. Del. 1991). A "debtor's business decision 'should be approved by the court unless it is shown to be 'so manifestly unreasonable that it could not be based upon sound business judgment, but only on bad faith, or whim or caprice.'" *In re Aerovox, Inc.*, 269 B.R. 74, 80 (Bankr. D. Mass. 2001) (Feeney, J.) (quoting *In re Logical Software*, 66 B.R. 683, 686 (Bankr. D. Mass. 1986); *see also Committee of Asbestos-Related Litigants and/or Creditors v. Johns-Manville Corp. (In re Johns-Manville Corp.)*, 60 B.R. 612, 616 (Bankr. S.D.N.Y. 1986) (same).

37. The Debtor has concluded, in its business judgment, that the Sale of the Acquired Assets to Purchaser will result in the highest and best value for the Acquired Assets. The proceeds from the Sale of the Acquired Assets will enable the Debtor to maximize the value of the Debtor's estate. The sale of the Acquired Assets is in the best interest of the estate and its creditors, and approval of the Sale is warranted. *See In re Martin*, 91 F.3d at 396; *In re Lionel Corp.*, 722 F.2d at 1070.

38. Further, pursuant to Section 363(f) of the Bankruptcy Code, the Debtor requests the authority to sell the Acquired Assets free and clear of all liens, claims, interests and other encumbrances. All liens, claims, interests and other encumbrances in and against the Acquired Assets will attach to the proceeds from the Sale to the same extent, priority and validity that existed on the Petition Date.

39. Section 363(f) of the Bankruptcy Code authorizes the sale of assets free and clear of liens, claims, interests and encumbrances of an entity if:

    a. applicable non-bankruptcy law permits sale of such property free and clear of such interests;

    b. such entity consents;

    c. such interest is a lien and the price at which such property is to be sold is greater than the value of all liens on such property;

    d. such interest is in *bona fide* dispute; or

    e. such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

11 U.S.C. § 363(f).

40. This provision is supplemented by section 105(a) of the Bankruptcy Code, which provides that "[t]he Court may issue any order, process or judgment that is necessary or appropriate to carry out the provisions of [the Bankruptcy Code]." 11 U.S.C. §105(a).

41. Because Bankruptcy Code section 363(f) is drafted in the disjunctive, satisfaction of any one of its five requirements will suffice to permit the sale of the Property "free and clear" of liens and interests. *Michigan Employment Sec. Comm'n v. Wolverine Radio Co. (In re Wolverine Radio Co.)*, 930 F.2d 1132, 1147 n.24 (6th Cir. 1991) (holding that the court may approve the sale "free and clear" provided at least one of the subsections of Bankruptcy Code section 363(f) is met); *In re Dundee Equity Corp.*, 1992 Bankr. LEXIS 436, at *12 (Bankr. S.D. N.Y. March 6, 1992) (same).

42. Here, the Debtor will demonstrate at the Sale Hearing (to the extent necessary) that one or more of the tests of section 363(f) are satisfied with respect to the Sale. In the first instance, the Debtor has no reason to believe that holders of liens, claims, interests and encumbrances would not consent to the terms of the Sale pursuant to section 363(f)(2) of the

Bankruptcy Code. In addition, the Debtor believes that all such holders could be compelled to accept a money satisfaction of their interests in legal or equitable proceedings in accordance with section 363(f)(5) of the Bankruptcy Code, to the extent that such interests are sought to be discharged in the Sale Approval Order.

43. Based upon the foregoing, the Debtor submits that the Sale, free and clear of liens, claims, interests and encumbrances, should be approved by the Bankruptcy Court upon the terms requested at the Sale Hearing under section 363(f) of the Bankruptcy Code.

44. The Debtor requests that the Bankruptcy Court waive the fourteen (14) day stay provision of Federal Rule of Bankruptcy Procedure 6004(g).

**B.    Authority to Assume Executory Contracts And Unexpired Leases**

45. As set forth above, the APA requires the Debtor to assume and assign to the Purchaser the Assumed Contracts. Cure Costs with respect to all such contracts are listed on Exhibit B to the Sale Procedures Motion.

46. Subject to court approval, Section 365(a) of the Bankruptcy Code authorizes a trustee to assume and assign an executory contract or unexpired lease. *See* 11 U.S.C. § 365(a). The standard for determining whether an executory contract or unexpired lease should be assumed and assigned is the "business judgment" test. *See In re Logical Software, Inc.*, 66 B.R. 683, 686 (Bankr. D. Mass, 1986) (The debtor's decision to assume or reject a contract "is to be accorded the deference mandated by the sound business judgment rule as generally applied by courts to discretionary actions or decisions of corporate directors."); *see also In re Orion Pictures Corp.*, 4 F.3d 1095, 1098 (2d Cir. 1993).

47. Upon finding that a trustee has exercised sound business judgment in determining that assumption and assignment is in the best interests of its estate, the court should approve the

607407-v1                    15

assumption and assignment under Section 365(a) of the Bankruptcy Code. *See, e.g., In re Child World, Inc.*, 142 B.R. 87, 89 (Bankr. S.D.N.Y. 1992); *In re Del Grosso*, 115 B.R. 136, 138 (Bankr. N.D. Ill. 1990).

48.    To determine if the business judgment test is met, the court "is required to examine whether a reasonable business person would make a similar decision under similar circumstances." *In re Exide Techs.*, 340 B.R. 222, 239 (Bankr. D. Del. 2006). Specifically, a court should find that the assumption or rejection has been decided on "an informed basis, in good faith, and with the honest belief that the assumption ... [is] in the best interests of [the debtor] and the estate." *In re Network Access Solutions Corp.*, 330 B.R. 67, 75 (Bankr. D. Del. 2005). Under this standard, a court should approve a debtor's business decision unless that decision is the product of bad faith or a gross abuse of discretion. *See Logical Software*, 66 B.R. at 686 (citing *Lubrizol Enters v. Richmond Metal Finishers*, 756 F.2d 1043, 1047 (4th Cir. 1985)).

49.    The assumption and assignment of the Assumed Contracts is necessary for the consummation of the APA. The continued performance of the contract counterparties under the Assumed Contracts is essential to permit Purchaser to realize the value reflected in the Purchase Price. Assumption and assignment of the Assumed Contracts is a condition precedent to Purchaser's obligations under the APA. Therefore, to realize the significant benefit to the Debtor's estate that would arise from consummation of the APA, the Debtor must assume and assign the Assumed Contracts.

50.    For the reasons described above, the Debtor has determined, in its business judgment, that the assumption and assignment of the Assumed Contracts is in the best interest of the Debtor, its creditors and parties in interest. The assumption and assignment of the Assumed

Contracts is therefore warranted pursuant to Section 365(a) of the Bankruptcy Code. *See In re Orion Pictures Corp.*, 4 F.3d at 1098.

51. The Debtor requests that the Bankruptcy Court waive the fourteen (14) day stay provision of Federal Rule of Bankruptcy Procedure 6006(d).

### NOTICE

52. Contemporaneously with the filing of this Sale Motion, the Debtor has filed the Sale Procedures Motion with respect to the proposed Sale to Purchaser. A proposed form of Notice of Sale is appended as Exhibit B to the Sale Procedures Motion. The Debtor will serve the Notice of Sale as described in the Sale Procedures Motion or, otherwise, in accordance with the direction of the Bankruptcy Court.

53. The Debtor has served this Sale Motion on: (i) the Office of the United States Trustee; (ii) all parties who have filed a notice of appearance and request for notice in these proceedings; (iii) any known creditor claiming an interest in the Debtor's property; and (iv) the Debtor's 20 largest creditors. The Debtor submits that such service is appropriate given the nature of the relief requested in this Sale Motion.

WHEREFORE, the Debtor respectfully requests that the Court enter the Sale Approval Order, substantially in the form attached hereto as Exhibit B:

(a) granting, in full, the relief requested in this motion,

(b) authorizing the Sale of the Acquired Assets pursuant to and as contemplated by the APA,

(c) authorizing the Debtor to take all steps necessary or appropriate to effectuate the APA,

(d) authorizing the Debtor to assume and assign to Purchaser the Assumed Contracts, and to pay all Cure Costs associated with the assumption and assignment of the Assumed Contracts, pursuant to and as contemplated by the APA,

(e)  waiving the stay provisions of Federal Rule of Bankruptcy Procedure 6004(g) and 6006(d), and

(f)  granting such other relief as this Court deems proper.

Respectfully submitted,

FRC, LLC

By its counsel,

/s/ *John C. Elstad*
Harold B. Murphy (BBO #362610)
John C. Elstad (BBO #654469)
MURPHY & KING, P.C.
One Beacon Street
Boston, MA 02108-3107
Tel: (617) 423-0400
Fax: (617) 556-8985
jce@murphyking.com

Dated: October 4, 2011