UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS
(Eastern Division)

| | |
|---|---|
| In re:<br><br>FRC, LLC,<br><br>Debtor. | Chapter 11<br><br>Case No. 11-19466 |

**MOTION BY DEBTOR FOR APPROVAL OF (A) SALE PROCEDURES,
(B) BREAK-UP FEE AND EXPENSE REIMBURSEMENT PROVISIONS AND (C) (1)
PROCEDURES FOR ASSUMPTION AND ASSIGNMENT OF EXECUTORY
CONTRACTS AND UNEXPIRED LEASES AND (2) FORM OF NOTICE OF
CONTRACT ASSUMPTION AND ASSIGNMENT AND CURE AMOUNTS IN
CONNECTION WITH SALE OF CERTAIN OF THE DEBTOR'S ASSETS FREE AND
CLEAR OF ALL LIENS, CLAIMS, INTERESTS AND ENCUMBRANCES**
(*Emergency Determination Requested*)

FRC, LLC ("FRC" or the "Debtor"), the debtor and debtor-in-possession in the above captioned case, hereby requests approval of (A) sale procedures (the "Sale Procedures"), (B) break-up fee (the "Break-up Fee") and expense reimbursement ("Expense Reimbursement") provisions and (C) (1) procedures for assumption and assignment of executory contracts and unexpired leases and (2) form of notice of contract assumption and assignment and cure amounts in conjunction with the *Debtor's Motion for Order (I) Authorizing the Sale of Certain Business Assets Free and Clear of All Liens, Claims, Interests and Encumbrances, (II) Authorizing the Assumption and Assignment of Certain Executory Contracts in Conjunction Therewith and (III) for Related Relief* (the "Sale Motion"). The Sale Motion seeks approval of the Asset Purchase Agreement (the "APA") that contemplates the sale of certain of the Debtor's assets more particularly described in the Sale Motion and the APA (collectively the "Acquired Assets") related to its asset management industry research report business free and clear of all liens,

607900

claims, interests and other encumbrances, as a going concern to Assets International, Inc. ("Purchaser").[1]

The Debtor respectfully requests that the Court schedule a hearing on this sale procedures motion (the "Sale Procedures Motion")[2] at the earliest opportunity because the Purchaser may terminate the APA if this Sale Procedures Motion has not been approved by October 18, 2011 and if the order approving the Sale Motion has not been entered by November 10, 2011. In further support of this Sale Procedures Motion, the Debtor states as follows:

## JURISDICTION

1. This Court has jurisdiction to consider and determine this motion pursuant to 28 U.S.C. § 1334. This is a core proceeding within the meaning of 28 U.S.C. § 157(b). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

2. The statutory predicates for the relief requested in this motion include Sections 105(a), 363 and 365 of the Bankruptcy Code, Rules 6004 and 6006 of the Federal Rules of Bankruptcy Procedure, and MLBR 6004-1 and 6006-1.

## BACKGROUND

3. On October 4, 2011 (the "Petition Date"), FRC filed a voluntary petition under chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code") with this Court. The Debtor continues to operate as a debtor-in-possession pursuant to Sections 1107 and 1108 of the Bankruptcy Code.

---

[1] Capitalized terms not otherwise defined in this motion shall have the meanings given them in the APA.

[2] This Sale Procedures Motion contains summaries of various terms of the APA but is not meant to be a substitute for the APA which may contain additional terms and conditions. In the event of a conflict between this motion and the APA, the APA shall control.

607900                                              2

4.   FRC had revenue of approximately $3.3 million in 2009 and $2.7 million in 2010, but has not been profitable, posting losses on net ordinary income of approximately $1.3 million for 2009 and approximately $640,000 for 2010. For 2011, FRC has had year-to-date revenues of approximately $1.5 million and a net ordinary income loss of approximately $600,000. The Debtor incurred significant start-up costs in 2009 related to the hiring of a new management team, investments in technology and legal and accounting fees. The Debtor's business was severely affected by the recession commencing in 2008 and the resulting uncertainty in the financial markets. Equity markets were hit hard and have been slow to recover, with continued high volatility. With equity markets depressed and volatile, the Debtor's customers, brokerage firms and asset managers, have aggressively slashed discretionary spending, cutting research budgets. Margin pressures forced industry consolidation (*e.g.* Ameriprise Financial Inc. merged with Columbia Management, both FRC customers) which permanently reduced the number of large buyers in FRC's traditional market. The Debtor has suffered an 82% decline in recurring relationship revenues since 2008. The Debtor also had difficulty in obtaining working capital to build out its business. Certain key employees were also lost over this period with a negative impact on revenues.

5.   Commencing in mid 2010, the Debtor initiated a process to explore the strategic alternatives and opportunities with respect to its business. As a result of that process, the Debtor determined to wind down its operations in conjunction with the proposed Sale of its most valuable assets. The Debtor determined to pursue discussions with the Purchaser, and permitted the Purchaser to undertake extensive diligence with respect to the Acquired Assets and the Debtor's business. Simultaneously with the due diligence process, the Debtor and Purchaser engaged in extensive negotiation with respect to the terms of an acquisition of the Acquired

Assets including the APA and related documentation. The result of these efforts is embodied in the APA that reflects no financing contingency or requirement for further due diligence.

6.  The Acquired Assets are comprised of certain assets specifically identified in the APA and on <u>Exhibit A</u> thereto and are owned and held by the Debtor and associated solely with the following business segments of the Debtor's business being acquired: (i) Investments-Mutual Funds (with the exception of the Mutual Fund Quarterly Market Review and the Mutual Fund Quarterly Sales Review), (ii) Investments-Subadvisory, (iii) Alternatives, (iv) 529 College Savings, and (v) Monitor (the "Business"); (b) the Debtor's rights under identified customer contracts related to the Business for periods on and after the Closing (the "Assumed Contracts"); (c) and the other assets as more particularly described on <u>Exhibit A</u> to the APA. All other assets of the Debtor not identified as Acquired Assets pursuant to the APA shall remain as property of the Debtor.

7.  Contemporaneously with the filing of this Sale Procedures Motion, the Debtor has filed the Sale Motion seeking authority to consummate the APA.

8.  The purchase price for the Acquired Assets (the "Purchase Price") is $500,000 subject to reduction at Closing (i) on a dollar for dollar basis to the extent that the "Actual Transaction Amount" is less than the "Projected Transaction Amount" where the "Actual Transaction Amount" is the amount paid or payable to the Debtor arising from customer transactions with the FRC business segments that are included in the Business that have been either invoiced, or for which there has been issuance and acceptance of a sales order or acknowledgment and in each case evidenced by a written or electronic customer acceptance or acknowledgement (the "Customer Transactions") during the period between September 1, 2011 and the Closing (the "Adjustment Period") and the "Projected Transaction Amount" is the

607900

4

amount projected to be paid or payable on account of Customer Transactions over the Adjustment Period pursuant to Section 2.5(c)(i) of the APA and (ii) by an amount equal to fifty percent (50%) of the sum of (A) the amount of accounts receivable of the Debtor existing at Closing, which arose from Customer Transactions during the period between the Petition Date and the Closing (the "Interim Period") and (b) any cash paid to Seller prior to Closing for such Customer Transactions during the Interim Period.

9. The Purchaser has made a good faith deposit of $50,000.

10. The APA requires the Debtor to assume and assign to Purchaser the Assumed Contracts (set forth on Exhibit A of the APA). The APA further provides that all prepetition cure amounts due under the Assumed Contracts ("Cure Costs") shall be paid by the Debtor on or before the Closing. Purchaser shall have no liability for such Cure Costs. The Assumed Contracts and the Cure Costs are listed on Schedule 1 to Exhibit B hereto. The Debtor shall file an updated Schedule 1 to Exhibit B with the Court seven (7) days prior to the date for submitting objections to the Sale Motion. Any executory contracts or unexpired leases not specifically set forth on Exhibit A of the APA will not be an assumed contract and will not be assigned to Purchaser.

11. The Debtor seeks approval of Sale Procedures, the Break-Up Fee and Expense Reimbursement and procedures regarding the assumption and assignment of executory contracts to ensure an orderly sale process and promote the maximum recovery for the Debtor's estate from the Acquired Assets.

12. The Purchaser may terminate the APA if this Sale Procedures Motion is not approved by October 18, 2011. In addition, the Purchaser may terminate the APA if the Sale Approval Order is not entered by November 10, 2011. The APA provides that the Closing shall

occur no later than fifteen (15) calendar days following the entry by the Bankruptcy Court of the Sale Approval Order, provided that the Sale Approval Order is a Final Order, unless the Sale Approval Order contains a finding pursuant to Bankruptcy Code Section 363(m) as to Purchaser's good faith and further provides that the Sale Approval Order shall be effective immediately upon entry notwithstanding Fed. R. Bankr. P. 6004(h) & 6006(d), in which case the closing shall occur no later than two (2) business days following the entry of the Sale Approval Order.

## RELIEF REQUESTED

A.   **Sale Procedures**

13.   The Debtor requests that the Bankruptcy Court enter an order substantially in the form attached hereto as <u>Exhibit A</u> approving the Sale Procedures (the "Sale Procedures Order") including the following provisions:

   a.   Any competing bid shall be deemed to qualify as a competing bid (a "Competing Bid") only if: (i) made upon terms and provisions set forth in the APA (with only non-material modifications thereto) for the purchase of all of the Acquired Assets and assumption of all of the Assumed Contracts described in the APA, and (ii) for a cash amount of at least ten percent (10%) more than the Purchase Price.

   b.   A Competing Bid must contain a case caption as set forth above and be filed, in accordance with the applicable Federal and local Rules of Bankruptcy Procedure,[3] with the United States Bankruptcy Court for the District of Massachusetts, John W. McCormack Post Office and Courthouse, 5 Post Office Square, Suite 1150, Boston, MA 02109-3945, on or before 5:00 p.m. on the third (3rd) business day prior to the scheduled hearing (the "Sale Hearing") on the Sale Motion (the "Bid Deadline"). A Competing Bid must be served on counsel for the Debtor, counsel for Asset International, Inc., counsel for the Official Committee of Unsecured Creditors, if any, and the Office of the United States Trustee (collectively the "Service Parties").

   c.   A Competing Bid must be accompanied by an executed asset purchase agreement in the form of the APA with only such non-material changes to the terms set forth

---

[3] Including, without limitation, the restrictions on facsimile filings pursuant to MLBR 5005-4.

        in the APA as are acceptable to the entity submitting the Competing Bid, including a purchase price expressed in U.S. Dollars and accompanied by all exhibits and schedules thereto (a "Competing APA").

d.    The Competing Bid must be accompanied by a marked copy of the Competing APA showing changes from the APA.

e.    A Competing Bid must not be subject to contingencies for financing or the completion of due diligence.

f.    Any bidder submitting a Competing Bid must deliver a cash deposit to counsel for the Debtor at the time of submission of such bid. The cash deposit shall be in the form of a certified check or wire transfer of immediately available funds, and must be received on or before the Bid Deadline. The deposit delivered by a competing bidder will be forfeited in the event that such competing bidder is the successful bidder and fails to close on the sale through no fault of the Debtor. The deposit shall be $50,000

g.    Any party submitting a Competing Bid shall demonstrate to the Debtor's satisfaction that: (i) it is financially able to consummate the transactions contemplated by the Competing Bid, in cash in the amount of the Competing Bid, which ability may be demonstrated by submission of bank statements, current audited or unaudited financial statements, or other reasonable evidence, or, if the bidder is an entity formed for the purpose of acquiring the assets in question, current audited or unaudited financial statements or other reasonable evidence of the financial capability of the equity holders of the bidder, (ii) it is able to perform under any assumed contracts and/or leases, (iii) it is able to fulfill all remaining obligations under the Competing APA, and (iv) it has written evidence of a financing commitment sufficient to permit the consummation of the transactions in question.

h.    Any party submitting a Competing Bid shall execute a confidentiality agreement that is, in form and substance, substantially the same as the confidentiality agreement executed by Purchaser.

i.    An auction for the Acquired Assets shall be held only if there is a Competing Bid. In the absence of a Competing Bid, the Debtor shall seek approval of the Sale to Purchaser, pursuant to the APA.

j.    Bidding at any auction for the Acquired Assets shall be conducted by the Court immediately prior to the Sale Hearing in accordance with procedures to be announced at the time of the auction.

k.    Only persons that have submitted a timely, qualified Competing Bid may participate in any auction.

    l.    Subsequent overbids shall be in increments of at least $10,000 greater than the initial overbid or any subsequent overbid. Purchaser shall be entitled to improve its offer at any auction for the Acquired Assets.

**B.**     **Procedures for Assumption and Assignment of Executory Contracts and Unexpired Leases**

14.     With respect to executory contracts and/or unexpired leases that are assumed and assigned pursuant to the APA (collectively, the "Assumed Contracts"), the Debtor proposes the following procedures:

    a.    Any interested party seeking to object to the assumption and assignment to any bidder, or to the validity of the cure amount, if any, as set forth in the Assumed Contract Notice (as defined below) or any subsequent Notice, or to otherwise assert that any amounts, defaults, conditions, or pecuniary losses (including accrued but not yet due obligations) that must be cured or satisfied under any of the Assumed Contracts in order for such contract or lease to be assumed and/or assigned (collectively, a "Cure Obligation"), must file and serve an objection (an "Assumption/Assignment Objection") so that such Assumption/Assignment Objection is docketed and received by the Service Parties not later than the Bid Deadline (the "Assumption/Assignment Objection Deadline").

    b.    An Assumption/Assignment Objection must set forth with specificity any and all Cure Obligations or conditions which such party asserts must be cured or satisfied in connection with the assumption and assignment of such Assumed Contract; provided, however, that any party to an Assumed Contract shall retain the right to object solely with respect to adequate assurance of future performance until the Sale Hearing only if such objection was raised in an Assumption/Assignment Objection on or prior to the Assumption/Assignment Objection Deadline. An Assumption/Assignment Objection shall set forth the cure amount that the objector asserts is due, the specific types and dates of the alleged defaults, pecuniary losses and conditions to assumption and assignment, and the support therefor, and all other objections to assumption and assignment.

    c.    Unless an Assumption/Assignment Objection is filed and served by the Assumption/Assignment Objection Deadline, all interested parties who have received actual notice of these procedures shall be deemed to have waived and released any right to assert a Cure Obligation and to have otherwise consented to the assumption and assignment and shall be forever barred and estopped from asserting or claiming against the Debtor, the buyer of the Acquired Assets, or any other assignee of the relevant Assumed Contract that any additional amounts are due or monetary or non-monetary defaults exist, or conditions to assignment must be satisfied, under such contract. Upon entry of the Sale Approval Order and Closing of the sale of the Acquired Assets, each non-debtor party to each

607900

8

        Assumed Contract will be required to fully perform all duties and obligations arising under such Assumed Contract, according to its terms.

d.     Hearings with respect to any Assumption/Assignment Objections may be held (i) at the Sale Hearing, or (ii) at such other date as the Court may designate; provided that the subject Assumed Contract may be assumed and assigned prior to resolution of any Assumption/Assignment Objection, if the cure amount asserted by the objecting party (or such lower amount as may be fixed by the Court) is deposited by the Debtor to be held in a segregated account maintained by the Debtor's counsel or such other person as the Court may direct pending further order of the Court or mutual agreement of the parties.

e.     Attached as Exhibit B is a proposed form of notice (the "Notice of Sale, Assumption and Assignment of Contracts and/or Unexpired Leases") that includes information with respect to the procedures for the Assumed Contracts as well as Notice of the Sale Hearing. The Assumed Contracts and proposed cure amounts are shown on Schedule 1 to Exhibit B. The Debtor proposes to serve the Notice of Sale, Assumption and Assignment of Contracts and/or Unexpired Leases on all parties to the Assumed Contracts.

f.     The Debtor shall file with the Court and serve upon any affected parties an updated Exhibit B, if Assumed Contracts have been added or deleted from the list of Assumed Contracts, seven (7) days prior to the date set for filing objections to the Sale Motion. Any counterparty to an Assumed Contract that receives notice of the assumption and assignment of a contract pursuant to an updated Exhibit B shall file and serve an Assumption/Assignment Objection, if any, by the Assumption/Assignment Objection Deadline.

15.     The Debtor shall pay the Cure Amounts as set forth in Schedule 1 to Exhibit B, or as otherwise determined by the Court, to the counterparty to an Assumed Contract and satisfy any Cure Obligation as determined by the Court, prior to the assumption and assignment of the Assumed Contracts

16.     In the event the Debtor and/or the party who submits the highest and best bid for the Acquired Assets fails to close on the sale, and such failure constitutes a breach of the APA or Competing APA (as applicable) by such party, then the Debtor requests that such party's Deposit shall be forfeited to the Debtor and the Debtor shall retain same as liquidated damages; however

607900                                      9

such retention of the Deposit by the Debtor shall be the Debtor's sole and exclusive remedy in the event of any such breach of the APA or Competing APA (as applicable) by such party.

17. If the party submitting the highest and best offer fails to close on the sale of the Acquired Assets, the Debtor requests that the Sale Procedures Order provide the Debtor with the authority to sell the Acquired Assets to the party submitting the next highest or best offer, as determined at the Sale Hearing without the necessity of further Court approval.

C. **Expense Reimbursement and Break-Up Fee Provisions**

18. The APA provides, in the event that Purchaser is not ultimately the successful bidder and in consideration of Purchaser's having expended considerable time and substantial expense in connection with the negotiation of the APA and Purchaser's due diligence investigation of the Acquired Assets and the Debtor's business, that Purchaser is entitled to the Expense Reimbursement. The Expense Reimbursement will reimburse Purchaser for its actual, out-of-pocket costs and expenses (including professionals' fees) actually incurred in connection with the APA and the related transactions in an amount not to exceed $20,000 (the "Expense Reimbursement"). In addition, Purchaser is entitled to a break-up fee equal to $20,000 (the "Break-Up Fee"). The Expense Reimbursement and Break-Up Fee are subject to Court approval and payable in the event a sale pursuant to a Competing Bid is consummated resulting in the sale of the Acquired Assets to a third party (an "Alternative Transaction"). The Debtor requests authority to pay the Expense Reimbursement and Break-Up Fee to the Purchaser within one (1) Business Day of the closing of the Alternative Transaction as an allowed administrative expense claim in the Bankruptcy Case pursuant to Section 503(b)(1) of the Bankruptcy Code.

D. **The Expense Reimbursement And Break-up Fee Should Be Approved**

19. Good and sufficient cause exists to approve the Expense Reimbursement and the Break-Up Fee.

20.     It is standard in Chapter 11 cases for a debtor to request a break-up fee to compensate an initial bidder, in case it is not ultimately the successful bidder, for coming forward and starting the sale process. Courts have approved break-up fees ranging from one to five percent of the purchase price. *See* Dreher, Nancy C. and Feeney, Joan N., BANKRUPTCY LAW MANUAL §11A:38 (5th ed. West 2010). Break-up fees "are important tools to encourage bidding and to maximize the value of the debtor's assets." *In re Integrated Res., Inc.*, 147 B.R. 650, 659 (S.D.N.Y. 1992).

21.     The Expense Reimbursement and the Break-Up Fee are the product of extensive negotiation between the Debtor and Purchaser. Purchaser has expended, and likely will continue to expend, considerable time, money and energy pursuing the Sale and has engaged in extended and lengthy good faith negotiations. The APA is the culmination of these efforts. The Expense Reimbursement and the Break-Up Fee provide reasonable and ordinary protection to the Purchaser.

22.     The Expense Reimbursement and the Break-Up Fee were material inducements for, and a condition of, Purchaser's entry into the APA. Purchaser is unwilling to act as the stalking-horse bidder without the Expense Reimbursement and the Break-Up Fee. The Expense Reimbursement and Break-Up Fee are, therefore, reasonable and necessary costs of preserving the value of the Debtor's estate.

23.     By having Purchaser as a stalking-horse bidder, much of the due diligence, contract negotiation and other work necessary to submit a bid for the Acquired Assets will have been completed. This will shorten the time and cost required for prospective bidders to submit a Competing Bid and will therefore promote such bids. The sale of the Acquired Assets as a going concern without a stalking-horse bidder would be more time consuming, more expensive and

would likely lead to fewer competitive bids. The approval of the Expense Reimbursement and the Break-Up Fee will, therefore, benefit the Debtor's bankruptcy estate.

24.     The Expense Reimbursement and the Break-Up Fee are common in sales of this type and are reasonable given the size of the transaction contemplated by the APA. The Break-Up Fee represents approximately four percent (4%) of the Purchase Price. The Expense Reimbursement represents approximately four percent (4%) of the Purchase Price.

25.     Therefore, the Expense Reimbursement and the Break-Up Fee should be approved.

### E.     The Sale Procedures Should Be Approved

26.     The Sale Procedures are usual and ordinary sale procedures for going-concern sales in this district and should be approved.

27.     The paramount purpose of any sale of property of the estate is maximization of the proceeds to be received. *See, e.g., In re Mushroom Transp. Co., Inc.*, 382 F3d 325, 339 (3d Cir. 2004). Courts recognize that bid procedures are an effective way to enhance competitive bidding and maximize the value to be received from sales of estate property. *See Integrated Res.*, 147 B.R. at 659-60.

28.     The proposed Sale Procedures will establish parameters under which the value of the Acquired Assets may be tested at the Sale Hearing. The Sale Procedures will enable the Debtor to conduct an auction in a controlled, open and fair fashion. This, in turn, will encourage active bidding from financially capable parties and dispel any doubts as to the highest and best offer for the Acquired Assets. The Sale Procedures are consistent with sale procedures previously approved by this Court. *See, e.g., In re GPX International Tire Corp.*, Case No. 09-20170 (Bankr. D. Mass October 30, 2009) [Docket No. 98]. The required first overbid increment

of $50,000 is modest compared to the Purchase Price, only ten percent (10%) of the Purchase Price. Subsequent overbid increments are much smaller, $10,000, representing only two percent of the original Purchase Price.

29. Therefore, the proposed Sale Procedures should be approved.

**F.     Notice of Sale**

30. Appended to this Sale Procedures Motion as <u>Exhibit B</u> is the proposed form of Notice of Sale, Assumption and Assignment of Contracts. Once the Court provides the Debtor with the date for the Sale Hearing and the deadline for filing objections to the Sale Motion and submission of counterbids, the Debtor will serve the Notice of Sale, Assumption and Assignment of Contracts and/or Unexpired Leases on all interested parties. The Debtor respectfully requests that the Court schedule the hearing on this Sale Procedures Motion on an emergency basis, because the Purchaser is entitled to terminate the APA if the Sale Procedures Motion has not been approved by October 18, 2011. The Debtor similarly requests that the Court schedule the Sale Hearing prior to November 10, 2011, and allow for the possibility of a contested hearing, because after that date Purchaser is entitled to terminate the APA if the Sale Approval Order has not been entered.

31. Upon receipt of the date scheduled for the Sale Hearing and the deadline for filing objections to the Sale Motion and submission of counterbids, the Debtor will serve the Notice of Sale, Assumption and Assignment of Contracts and/or Unexpired Leases on the following parties:

    a.    counsel to the creditors' committee, if any;

    b.    any party who, in the past year, expressed in writing to the Debtor an interest in the Acquired Assets or the Debtor's business;

      c.     non-debtor parties to the Assumed Contracts;

      d.     all parties who are known or reasonably believed to have asserted a lien, encumbrance, claim or other interest in the Acquired Assets;

      e.     the Internal Revenue Service;

      f.     all applicable state and local taxing authorities;

      g.     the Office of the United States Trustee for the District of Massachusetts;

      h.     all attorneys who have filed notices of appearance in the chapter 11 case;

      i.     all entities that have requested notice in the chapter 11 case; and

      j.     all other parties identified on the creditor matrix in these cases.

## EMERGENCY DETERMINATION REQUESTED

32. Pursuant to MLBR 9013-1(g), the Debtor seeks the relief requested in this motion on an emergency basis. The Purchaser is entitled to terminate the APA if this Sales Procedures Motion is not approved by October 18, 2011. The Purchaser is further entitled to terminate the APA if the Sale Approval Order is not approved by November 10, 2011. As such, the Debtor seeks a determination of this motion on an emergency basis so that the sale process may be established and service of notice of the Sale Hearing may commence as soon as possible.

## NOTICE

33. Copies of this Sale Procedures Motion have been served upon: (i) the Office of the United States Trustee; (ii) counsel for Asset International, Inc.; (iii) the Debtor's 20 largest creditors; (iv) any creditor known to have asserted a lien of interest in the Debtor's property; and (iv) all parties who have filed a notice of appearance and request for notice in these proceedings. The Debtor requests that such notice be deemed sufficient and appropriate notice.

WHEREFORE, the Debtor requests that the Court:

(a)  Schedule a hearing on this Sale Procedures Motion on an emergency basis,

(b)  Schedule the hearing on the Sale Motion prior to November 10, 2011, as well as schedule the date for filing objections to the Sale Motion and submission of counterbids for three (3) business days prior to the Sale Hearing,

(c)  Approve this Sale Procedures Motion,

(d)  Approve the Sale Procedures,

(e)  Approve the Expense Reimbursement and the Break-Up Fee,

(f)  Approve the procedures with respect to the assumption and assignment of Assumed Contracts,

(g)  Enter the Sale Procedures Order, substantially in the form attached as <u>Exhibit A</u>,

(h)  Approve the Notice of Sale and Assumption, Assignment of Contracts attached hereto as <u>Exhibit B</u>, and

(g)  Grant such other relief as is just and proper.

> Respectfully submitted,
>
> FRC, LLC
>
> By its counsel,
>
> /s/ *John C. Elstad*
> Harold B. Murphy (BBO#326610)
> John C. Elstad (BBO #654469)
> MURPHY & KING, Professional Corporation
> One Beacon Street
> Boston, Massachusetts 02108
> Phone: (617) 423-0400
> Fax: (617) 423-0498
> jce@murphyking.com

Dated:  October 4, 2011