UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS
(Eastern Division)

| | |
|---|---|
| In re: )<br>)<br>) | Chapter 11 |
| FRC, LLC, )<br>) | |
| ) | Case No. 11-19466 |
| Debtor. ) | |
| ) | |

MOTION OF DEBTOR AND DEBTOR-IN-POSSESSION FOR
(A) AUTHORITY TO BORROW PURSUANT TO 11 U.S.C. §364,
AND (B) RELATED RELIEF
(*Emergency Determination Requested*)

FRC, LLC ("FRC" or the "Debtor"), the debtor and debtor-in-possession in the above-captioned Chapter 11 case, requests that the Court enter orders: (a) authorizing FRC, on an interim and final basis, to obtain post-petition financing, pursuant to Section 364(c)(1)-(3) of title 11 of the United States Code (the "Bankruptcy Code"), in accordance with the form of order (the "Agreed Order") attached hereto as Exhibit A; (b) authorizing FRC to grant liens to secure repayment of the amounts borrowed pursuant to the Agreed Order as well as a super-priority administrative claim for such amounts; (c) scheduling such further hearings on the relief requested by this motion as may be necessary; and (d) granting related relief.

FRC has obtained a loan commitment from Mercatus RC, LLC ("Mercatus RC")[1] to provide up to $110,000 of financing (the "DIP Credit Facility") to FRC. The DIP Credit Facility is necessary to provide financing for the Debtor to operate its business, the provision of asset

---

[1] Mercatus RC is an insider of the Debtor as that term is defined pursuant to 11 U.S.C. §101(31).

607901

management industry research reports, from the Petition Date through the sale of a substantial part of FRC's business pursuant to Bankruptcy Code Section 363 (the "Sale").[2, 3]

## JURISDICTION AND VENUE

1.      This Court has jurisdiction over this motion pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

2.      The statutory predicates for this motion include Bankruptcy Code Sections 105, 361, 362, 363, and 364 of the Bankruptcy Code, Rule 4001 of the Federal Rules of Bankruptcy Procedure and MLBR 4001-2.

## PROPOSED TERMS OF FINANCING

3.      In accordance with Rule 4001 of the Federal Rules of Bankruptcy Procedure and MLBR 4001-2, the following is a concise statement of the basic loan terms for the DIP Credit Facility:

| Amount | Up to $110,000 | Agreed Order ¶4 |
|---|---|---|
| Interest Rate | 6.00%. | Agreed Order ¶6 |
| Primary Security | To secure repayment of amounts advanced under the DIP Credit Facility, Mercatus RC shall be granted a first priority lien on all the Debtor's assets subject (i) to valid and perfected prepetition security interests for leased or purchase money financed equipment and (ii) the Carve Out (see below). | Agreed Order ¶¶8-9 |

---

[2] The Sale is more particularly described in the *Debtor's Motion for Order (I) Authorizing the Sale of Certain Business Assets Free and Clear of All Liens, Claims, Interests and Encumbrances, (II) Authorizing the Assumption and Assignment of Certain Executory Contracts in Connection therewith and (III) Granting Related Relief* (the "Sale Motion") filed contemporaneously herewith.

[3] Capitalized terms not otherwise defined in this motion shall have the meanings ascribed to them in the Sale Motion.

2

607901

| | | |
|---|---|---|
| Carve Out | There shall be a Carve Out from the first priority lien to be granted herein for the Debtor's professionals in the amount of up to $32,500 as well as for accrued but unpaid fees of the United States Trustee pursuant to 28 U.S.C. § 1930. | Agreed Order ¶17 |
| Super-priority Admin Claim | Mercatus RC shall also be granted a super-priority administrative claim, subject to the Carve Out, for amounts advanced under the DIP Credit Facility | Agreed Order ¶10 |
| Maturity | January 31, 2012 | Agreed Order ¶19(a) |
| Earlier Termination | The earliest to occur of (a) consummation of the Sale; (b) the conversion of FRC's bankruptcy case to one under chapter 7; (c) the dismissal of FRC's bankruptcy case. | Agreed Order ¶¶18-19 |
| Section 506(c) waiver | Except for the Carve Out, the Debtor waives its surcharge rights pursuant to Bankruptcy Code Section 506(c) | Agreed Order ¶¶17 |

## BACKGROUND

4.  On October 4, 2011 (the "Petition Date"), FRC filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code in the Bankruptcy Court. The Debtor continues to operate as a debtor-in-possession pursuant to Sections 1107 and 1108 of the Bankruptcy Code.

### A. The Debtor And Its Ownership

5.  FRC is a Delaware limited liability company that prepares, markets and sells asset management industry research reports, including reports on investment industry trends and financial product performance, to investment and asset management professionals.

6.  FRC was established in a November 2008 transaction (the "2008 Acquisition") in which it purchased the assets of the Financial Research Corporation from Citi Fund Services, Inc. ("Citi") for a purchase price of $3 million. In payment of the purchase price, Citi took back a

607901

promissory note from FRC in the face amount of $2.15 million which obligation was secured by substantially all FRC's assets.

7.  The membership interests in FRC are held 77% by Mercatus RC, LLC ("Mercatus RC"). Robert Hedges ("Hedges") and Teresa Epperson ("Epperson") directly hold approximately 3% and 1% of the membership interests respectively in the Debtor. Hedges and Epperson are the managing members of FRC. The remainder of the membership interests in FRC are held by individual investors and management personnel none of whom hold more than 5%. The membership interests in Mercatus RC are held 20% by Mercatus LLC and 40% by Hedges and 40% by Epperson. The membership interests in Mercatus LLC were, until recently, held approximately 67% by Hedges and 33% by Epperson.

**B.   The Debtor's Financial Difficulties**

8.  FRC had revenue of approximately $3.3 million in 2009 and $2.7 million in 2010, but has not been profitable, posting losses on net ordinary income of approximately $1.3 million for 2009 and approximately $640,000 for 2010. For 2011, FRC has had year-to-date revenues of approximately $1.5 million and a net ordinary income loss of approximately $600,000. The Debtor incurred significant start-up costs in 2009 related to the hiring of a new management team, investments in technology and legal and accounting fees. The Debtor's business was severely affected by the recession commencing in 2008 and the resulting uncertainty in the financial markets. Equity markets were hit hard and have been slow to recover, with continued high volatility. With equity markets depressed and volatile, the Debtor's customers, brokerage firms and asset managers, have aggressively slashed discretionary spending, cutting research budgets. Margin pressures forced industry consolidation (*e.g.* Ameriprise Financial Inc. merged with Columbia Management, both FRC customers) which permanently reduced the number of

607901

large buyers in FRC's traditional market. The Debtor has suffered an 82% decline in recurring relationship revenues since 2008. The Debtor also had difficulty in obtaining working capital to build out its business. Certain key employees were also lost over this period with a negative impact on revenues.

### C.  The Debtor's Assets And Liabilities

9.  The Debtor's assets consist primarily of good will that had a recent book value of approximately $2.8 million and secondarily of accounts receivable and other current assets with a recent book value of approximately $170,000.

10. As of the Petition Date, only one creditor, Coactive Capital Partners, Inc. ("Coactive"), had filed a financing statement with respect to the Debtor's property asserting a security interest in certain leased computer and related equipment. According to the Debtor's books and records, Coactive has a prepetition claim of approximately $16,000.

11. In addition to its obligation to Coactive, the Debtor has scheduled approximately $4.3 million in unsecured obligations. Of this amount, approximately $3.5 million is owed to insiders: approximately $1.7 million is owed to Mercatus RC for loans made to the Debtor since the 2008 Acquisition, another approximately $1.5 million is owed to Mercatus RC for contribution on account of its payment in August 2011 of the Debtor's obligation to Citi on the promissory note issued in connection with the 2008 Acquisition and approximately $275,000 is owed to Hedges and Epperson. The balance of the Debtor's unsecured debt, approximately $810,000, constitutes debt associated with the Debtor's business operations.

### D.  The Debtor's Wind Down Plan

12. Commencing in mid 2010, the Debtor initiated a process to explore the strategic alternatives and opportunities with respect to its business. As a result of that process, the Debtor

5

607901

determined to wind down its operations in conjunction with the proposed Sale of its most valuable assets. Prior to the Petition Date, the Debtor terminated eight employees. Four other "Key Employees" will continue to work for the Debtor over the period from the Petition Date through the consummation of the Sale (the "Interim Period") and will thereafter be employed by the Purchaser (and simultaneously terminated by the Debtor). Another four employees will continue to work for the Debtor for part of the Interim Period to assist with the wind down and Sale.

13. The Debtor expects to collect postpetition the accounts receivable generated from the prepetition sales of financial reports in the amount of approximately $80,000. The Debtor intends to generate new sales of certain prepetition reports not in the product categories subject to the Sale during the Interim Period and, as a result, collect an additional $55,000. The Debtor anticipates generating new sales during the Interim Period for financial reports in the product categories subject to the Sale (*i.e.* related to the "Business") in the amount of approximately $252,000. The Purchaser will receive a 50% credit against the Purchase Price for the accounts receivable generated for the Business during the Interim Period and the proceeds thereof paid prior to the closing. The Debtor, however, is entitled to collect all the accounts receivable generated on sales during the Interim Period.

14. The Debtor believes that the collection of accounts receivable as described above in conjunction with receipt of the Purchase Price pursuant to the Sale will maximize the value of the Debtor's estate and the recovery for unsecured creditors.

15. Subsequent to the Sale, the Debtor will file a liquidating plan of reorganization that will provide for the distribution to creditors of the proceeds from the Sale and the collection of accounts receivable. The Debtor has preliminarily obtained the agreement of Mercatus RC to

607901

voluntarily subordinate its claims (but not amounts advanced under the DIP Credit Facility) to the claims of third party creditors in consideration for which it would be granted a customary release pursuant to the plan.

16. The DIP Credit Facility is essential to the wind down plan. Postpetition financing is necessary for the Debtor to continue operating over the Interim Period and maintain the Business as a going concern prior to the Sale. It is a condition precedent to the closing of the Sale that the Debtor obtain postpetition financing on an interim basis by October 7, 2011 and maintain the Business to be sold in the Sale as a going concern.

### REQUEST FOR RELIEF

#### A.     Post-Petition Financing

17. The Debtor seeks authority to borrow up to $110,000 under the DIP Credit Facility. The DIP Credit Facility will mature, absent intervening occurrences in this proceeding, on January 31, 2012. As security for the DIP Credit Facility, the Debtor proposes to grant to Mercatus RC a first-priority lien on all its assets (the "Liens") subject only to (i) valid and perfected prepetition security interests for leased or purchase money financed equipment and (ii) a carve out (the "Carve Out") for the Debtor's professionals in the amount of up to $32,500 as well as for accrued but unpaid fees of the United States Trustee pursuant to 28 U.S.C. § 1930. The Debtor also proposes to grant Mercatus RC a super-priority administrative claim, subject to the Carve Out, as further security for the repayment of the advances to be made under the DIP Credit Facility,

18. The amounts advanced under the DIP Credit Facility will be used to pay employee salaries and all other ordinary operating expenses necessary to maintain the Debtor's business as a going concern from the Petition Date through the consummation of the Sale.

7

607901

19. The Debtor has attached hereto as <u>Exhibit B</u> an eight week budget forecasting collections and expenditures as well as necessary draws on the DIP Credit Facility.

    i. <u>Authority to Borrow</u>

20. Section 364 of the Bankruptcy Code provides bankruptcy courts with the power to authorize post-petition financing for a Chapter 11 debtor-in-possession. *See In re Vineyard Bay Dev. Co., Inc.*, 132 F.3d 269, 272 (5th Cir. 1998); *In re Indian Motorcycle Co., Inc.*, 289 B.R. 269, 282 (B.A.P. 1st Cir. 2003) ("Having recognized the natural reluctance of lenders to extend credit to a company in bankruptcy, Congress designed § 364 to provide 'incentives to the creditor to extend post-petition credit'"), *citing In re Florida West Gateway, Inc.*, 147 B.R. 817, 819 (Bankr. S.D. Fla. 1992); *In re Garland Corp.*, 6 B.R. 456, 463 (B.A.P. 1st Cir. 1980); *In re Pro Set, Inc.*, 193 B.R. 812, 814 (Bankr. N.D. Tex. 1996).

21. Section 364(c) of the Bankruptcy Code provides, in pertinent part, as follows:

> If the trustee is unable to obtain unsecured credit allowable under section 503(b) of this title as an administrative expense, a court, after notice and a hearing, may authorize the obtaining of credit or the incurring of debt –
>
>     (1)    with priority over any or all administrative expenses of the kind specified in section 503(b) or 507(b);
>
>     (2)    secured by a lien on property of the estate that is not otherwise subject to a lien; or
>
>     (3)    secured by a junior lien on property of the estate that is subject to a lien.

11 U.S.C. § 364(c).

22. Courts have articulated a three-part test to determine whether a debtor may obtain financing pursuant to Section 364(c) of the Bankruptcy Code:

    a.    The debtor is unable to obtain unsecured credit pursuant to Section 364(b), *i.e.*, by granting a lender administrative expense priority;

      b. The credit transaction is necessary to preserve the assets of the estate; and

      c. The terms of the transaction are fair, reasonable and adequate, given the circumstances of the debtor-borrower and the proposed lender.

*See In re The Crouse Group, Inc.*, 71 B.R. 544 (Bankr. E.D. Pa. 1987); *see also Bland v. Farmworker Creditors*, 308 B.R. 109, 113-14 (S.D. Ga. 2003); *In re Mid-State Raceway, Inc.*, 323 B.R. 40, 60 (Bankr. N.D.N.Y. 2005) (citing *Crouse* and similar factors); *In re Ames Dept. Stores Inc.*, 115 B.R. 34, 37-39 (Bankr. S.D.N.Y. 1990).

23. The Debtor has been unable to obtain financing from a third party on an unsecured or administrative claim basis. The Debtor has no alternative source of funding to meet its operational needs, and requires the DIP Credit Facility to maintain its business as a going concern through the consummation of the Sale. Without the DIP Credit Facility, the Debtor will likely be unable to operate, and it is likely that serious and irreparable harm to the Debtor and its estate will result. The DIP Credit Facility will therefore preserve, maintain and enhance the value of the Debtor's estate.

24. In order to satisfy the requirements of Section 364(c), a debtor need not seek credit from every available source, but should make a reasonable effort to seek other sources of unsecured credit available as set forth in Sections 364(a) and (b) of the Bankruptcy Code. *See Ames Dept. Stores*, 11 B.R. at 40 citing *In re Snowshoe Co.*, 789 F.2d 1085, 1088 (4th Cir. 1986). A debtor is generally permitted to exercise its sound and reasonable business judgment consistent with its fiduciary duties when evaluating the necessity of proposed protections for a party extending credit under Section 364. *See In re Defender Drug Stores, Inc.*, 145 B.R. 312, 317 (B.A.P. 9th Cir. 1992) (courts defer to business judgment of trustee in decisions to borrow money so long as terms of financing arrangement do not usurp the provisions of the Code or the

607901

court's authority); *Ames Dept. Stores*, 115 B.R. at 40 (noting that "the court's discretion under section 364 is to be utilized on grounds that permit reasonable business judgment to be exercised so long as the financing agreement does not contain terms that leverage the bankruptcy process and powers or its purpose is not so much to benefit the estate as it is to benefit a party-in-interest"). The Debtor has met this standard with respect to the DIP Credit Facility.

        ii..     <u>Interim Approval</u>

25.     Bankruptcy Rule 4001(c) and MLBR 4001-2(e), respectively, provide that a final hearing on a motion to obtain post-petition credit pursuant to section 364 of the Bankruptcy Code may not be commenced earlier than fourteen (14) days after the service of such motion and after service of the notice of hearing. Upon request, however, the Court is empowered to conduct a preliminary hearing on the motion and authorize the obtaining of credit to the extent necessary to avoid immediate irreparable harm to a debtor's estate.

26.     The Debtor requests that the Court enter an interim order authorizing the Debtor to obtain advances under the DIP Credit Facility in an amount not to exceed $50,000 pending a final hearing on this motion. The Debtor has an urgent and immediate need for cash to pay employees and ensure that its business continues as a going concern. Absent interim approval of the DIP Credit Facility, the preservation of the value of the Debtor's business will be jeopardized.

### EMERGENCY DETERMINATION REQUESTED

27.     Pursuant to MLBR 9013-1(g), the Debtor seeks the interim relief requested in this motion on an emergency basis. The Debtor requires the DIP Credit Facility in order to meet its postpetition obligations including payroll and continue its operations on a going concern basis. Entry of an order authorizing postpetition financing on an interim basis by October 7, 2011 is a

condition to the Purchaser's obligation to close the Sale. Continuance of the Debtor's business on a going concern basis through consummation of the Sale is a condition precedent to the closing of the Sale. As such, the Debtor seeks a determination of this motion on an emergency basis.

## NOTICE

28. Pursuant to MLBR 4001-2(b), the Debtor has served this Motion on (a) its twenty largest creditors, (b) all parties known to have asserted liens or security interests in the Debtor's property, (c) the Office of the United States Trustee for the District of Massachusetts; and (d) all parties having filed a notice of appearance and request for service of documents in these Chapter 11 cases. The Debtor submits that, given the extensive notice provided, no other or further notice is necessary.

**WHEREFORE**, the Debtor respectfully requests that this Court enter an order:

A. Authorizing the Debtor to obtain post-petition financing on an interim and final basis, pursuant to Section 364 of the Bankruptcy Code, in accordance with the Agreed Order;

B. Authorizing the Debtor to grant the Liens;

C. Authorizing the Debtor to grant Mercatus RC a super-priority administrative claim for all advances made to the Debtor under the DIP Credit Facility;

D. Scheduling such additional hearings as may be necessary; and

    E.    Granting to the Debtor such other relief as the Court deems just and proper in the circumstances.

        Respectfully submitted,

        FRC, LLC,

        By its counsel,

        */s/ John C. Elstad*
        Harold B. Murphy (BBO #362610)
        John C. Elstad (BBO #654469)
        Murphy & King Professional Corporation
        One Beacon Street, 21st Floor
        Boston, MA  02108-3107
        Telephone:  (617) 423-0400
        Facsimile:  (617) 423-0498
        Email: jce@murphyking.com

Dated:  October 4, 2011

607901