UNITED STATES BANKRUPTCY COURT
FOR THE
DISTRICT OF MASSACHUSETTS
(Eastern Division)

In re:

FRC, LLC,

Debtor.

Case No. 11-19466

Chapter 11

**INTERIM ORDER AUTHORIZING DEBTOR (1) TO OBTAIN POST-PETITION FINANCING, (2) GRANTING SENIOR LIENS AND SUPER PRIORITY ADMINISTRATIVE EXPENSE STATUS, (3) MODIFYING THE AUTOMATIC STAY AND (4) SETTING FINAL HEARING PURSUANT TO BANKRUPTCY RULE 4001**

**THIS MATTER** having come before the Court upon the Motion dated October 4, 2011 (the "Motion") of FRC, LLC, the debtor and debtor in possession (the "Debtor") seeking the entry of Interim and Final Orders including authority to:

    a.    Obtain credit and incur debt secured by liens (as defined in Section 101(37) of Title 11, U.S.C., as amended (the "Bankruptcy Code") and referred to herein as "Liens") on property of the Debtor's estate pursuant to Sections 364(c)(2) and 364(c)(3) of the Bankruptcy Code and with priority, as to administrative expenses, as provided in Section 364(c)(1) of the Bankruptcy Code.

    b.    Establish the DIP Credit Facility (as hereafter defined) with Mercatus RC, LLC ("Lender"), as set forth herein and further described in the Motion.

    c.    Provide Lender with Liens upon the Debtor's property as provided in and as contemplated by this Order.

    d.    Grant Lender a Super-Priority Claim (as hereafter defined) over any and all administrative expenses other than as set forth in Paragraph 10, below.

1

608280

e. Modify the automatic stay to the extent necessary and required to accomplish the provisions hereof.

f. Set a date for a Final Hearing.

It appearing that absent the relief requested herein, the Debtor will suffer immediate and irreparable harm; and it further appearing that notice of the preliminary hearing on the Motion is sufficient under the circumstances; and for good cause shown;

**THIS COURT MAKES THE FOLLOWING FINDINGS OF FACT AND RULINGS OF LAW:**[1]

A. On October 4, 2011 (the "Petition Date"), the Debtor filed a voluntary petition under Chapter 11 of the Bankruptcy Code (the "Bankruptcy Case").

B. The Debtor continues in the management and operation of its business and property as debtor in possession pursuant to Bankruptcy Code Sections 1107 and 1108. No trustee or examiner has been appointed in this case, and no official creditors committee has been formed as of the date hereof.

C. This Court has jurisdiction over this proceeding, and over the persons and property affected hereby, pursuant to 28 U.S.C. §§157(b) and 1334. Consideration of this Motion constitutes a core proceeding under 28 U.S.C. § 157(b)(2)(A), (D), and (G).

D. The Debtor has properly served notice of the Motion and request for entry of this Order pursuant to sections 102, 361, 362, 363 and 364 of the Bankruptcy Code, Federal Rules of Bankruptcy Procedure 2002 and 4001[2], MLBR Rules 2002-1 and 9013-1, which notice was sent to among others: (a) the Debtor's twenty (20) largest unsecured creditors; (b) the Office of the United States Trustee; and (c) all parties known by the Debtor to have liens on, or security

---

[1] To the extent any of the findings of fact set forth herein constitute conclusions of law, and/or to the extent any of the conclusions of law set forth herein constitute findings of fact, they are hereby adopted as such.
[2] As used herein the Federal Rules of Bankruptcy Procedure are referred to as the "Bankruptcy Rules."

2

interests in, any of the property of the Debtor. This notice is appropriate in the particular circumstances and is sufficient for all purposes under the Bankruptcy Code and the applicable Bankruptcy Rules in respect to the relief requested.

      E.      The Debtor has filed a motion seeking authority to enter into a transaction with Asset International, Inc. (a "Sale Transaction") to sell its operations as a going concern.

      F.      The Debtor needs funding as authorized herein to fund the costs and expenses associated with the operation of Debtor's business and the conduct of the Bankruptcy Case ("Permissible Uses"), in the amounts and categories of Debtor's budget attached hereto as **Exhibit A** (the "DIP Budget").

      G.      The Lender has agreed to provide the requested financing and to enter into a debtor in possession credit facility with the Debtor to fund Permissible Uses under the DIP Budget, to make loans to the Debtor up to the maximum amount of $110,000 (the "DIP Loans") on a senior secured, superpriority basis on the terms and conditions of this Order (the "DIP Credit Facility").

      H.      An immediate need exists for the Debtor to obtain funds with which to pay ordinary expenses of operation, and administer and preserve the Debtor's estate while the Debtor seeks to maximize the value of its estate through consummating a Sale Transaction. The ability of the Debtor to finance its operations requires the additional availability of working capital, the absence of which would immediately and irreparably harm the Debtor, its estate, and its creditors and the possibility of consummating a Sale Transaction. The relief requested in the Motion is necessary, essential, and appropriate for the continued operation of the Debtor's business and the management and preservation of its property.

I. The Debtor asserts that the Debtor's access to sufficient working capital and liquidity through borrowings under the DIP Credit Facility is vital to the preservation and maintenance of the going concern value of Debtor. The Debtor asserts that the Debtor is unable to obtain financing on more favorable terms from sources other than the Lender under this Order and is unable to obtain adequate unsecured credit allowable under sections 364(c)(1) or 503(b)(1) of the Bankruptcy Code as an administrative expense. The Debtor asserts that the Debtor is also unable to obtain secured credit from sources other than the Lender that would be allowable under sections 364(c)(2) and 364(c)(3) of the Bankruptcy Code for the purposes set forth in this Order and Super-Priority Claim as defined and set forth herein. The Debtor has determined that it will not be able to adequately finance its business operations by using only cash it generates from its business and that it requires immediate access to additional financing. The Debtor has also determined that its immediate working capital needs through the date of the final hearing on the Motion (the "Final Hearing") could be met with access to $50,000 of financing.

J. The terms of the DIP Credit Facility have been negotiated in good faith and at arm's length between the Debtor and the Lender, and all of Debtor's obligations and indebtedness arising postpetition under, in respect of or in connection with this Order, including without limitation, any and all amounts due, whether now existing or hereafter arising, under the DIP Loans or any related financing document, owed or owing to the Lender by Debtor, in each instance, whether absolute or contingent, direct or indirect, secured or unsecured, due or not due, primary or secondary, joint or several, arising by operation of law or otherwise, and all interest and other charges thereon, including post-petition interest (collectively, the "Obligations"), shall be deemed to have been extended by the Lender in good faith, as that term is used in

section 364(e) of the Bankruptcy Code and in express reliance upon the protections offered by section 364(e) of the Bankruptcy Code, and the Obligations, the Liens and the Super-Priority Claims shall be entitled to the full protection of section 364(e) of the Bankruptcy Code in the event that this Order or any provision hereof is vacated, reversed or modified, on appeal or otherwise, or modification of the terms of the financing authorized by this Order.

K. The terms of the DIP Loans and this Order are fair and commercially reasonable, reflect the Debtor's prudent exercise of business judgment consistent with its fiduciary duties and constitute reasonably equivalent value and fair consideration.

L. It is in the best interest of Debtor's estate to be allowed to establish the DIP Credit Facility contemplated by this Order, and the terms and conditions of the DIP Credit Facility are fair, reasonable, and the best available under the circumstances.

M. Good and sufficient cause has been shown for the entry of this Order. Among other things, the entry of this Order will enable the Debtor to continue the operation of its business; increase the likelihood of the Debtor consummating a successful Sale Transaction; and will be in the best interest of the Debtor, its creditors, and its estate.

**NOW, THEREFORE, THE COURT HEREBY ORDERS AS FOLLOWS:**

1. <u>Disposition</u>. The Motion is granted on an interim basis, on the terms set forth in this Order, through the date of the Final Hearing. A Final Hearing on this Order has been scheduled as provided in Section 28 below.

2. <u>DIP Loans</u>. Debtor is hereby, based on entry of this Order, authorized (i) to enter into the DIP Credit Facility incorporated in this Order, and (ii) do all other things and execute and deliver all other documents, instruments and agreements contemplated by this Order. Without limiting the foregoing, to the extent the Lender deems necessary, the Debtor shall

execute all documents reasonably required by the Lender to evidence the terms and conditions of the proposed borrowing under the DIP Credit Facility.

3. <u>Repayment Obligation; Purpose</u>. Debtor is obligated to immediately repay the Obligations upon the Termination Date (as defined below). The proceeds of the DIP Loans shall be used for the Permissible Uses, and subject to the terms and conditions set forth in this Order.

4. <u>Requests for DIP Loans</u>. So long as the Termination Date has not occurred and no Termination Event (as defined below) has occurred and is continuing, the Lender shall make DIP Loans to pay the items set forth in the DIP Budget in the amounts and at the times set forth in the DIP Budget; provided, however that the aggregate advances under the DIP Budget through the date of the Final Hearing shall not exceed $50,000.

5. <u>Disbursements under DIP Credit Facility</u>. Subject to the conditions contained herein, the Lender agrees to make available disbursements to the Debtor on a weekly basis (to the extent required as set forth in the DIP Budget), commencing immediately following entry of this Order, for the payment of expenses set forth in the DIP Budget in such week and in the amounts set forth in such DIP Budget in an amount equal to 100% of the projected operating deficit for such week shown on the DIP Budget up to the aggregate amount of $50,000 through the date of the Final Hearing; provided, however, to the extent the Debtor's cash flow under the DIP Budget is better than as set forth in the DIP Budget and, as a result, the Debtor does not require an advance of any funds from the Lender in a particular week, the Debtor may request and the Lender shall advance any such funds in any later week in which such funds are required to the extent a Termination Event has not occurred. The Debtor shall use all funds made available to it pursuant to this Section 5 exclusively to fund the costs set forth in the DIP Budget. To the extent the DIP Budget and/or Weekly Budget Reports (as defined below) do not identify a

projected operating deficit for any given week, the Lender shall not make DIP Loans for such week.

6.  Interest.  Subject to this Section 6, the DIP Loans shall accrue interest under the DIP Credit Facility at the rate of 6.00% per annum.  From and after the occurrence of a Termination Event and until such time as any and all Obligations are satisfied in full in cash, the DIP Loans shall accrue interest at a rate of 8.00% per annum.

7.  Termination Date.  Subject to compliance with the terms and conditions of this Order, the Debtor is authorized to borrow the DIP Loans, during the period from the date of entry of this Order and ending upon a Termination Event (such end date being defined as the "Termination Date").

8.  Liens.  As security for the Obligations, effective and perfected upon the date of entry of this Order, and without the necessity of the execution or recordation of filings by Debtor, of security agreements, pledge agreements, fixture filings, mortgages, hypothecs, deeds of trust, control agreements, financing statements or other similar documents, or the possession or control by the Lender, the following security interests in and liens are hereby granted to the Lender on and over all property and other assets of Debtor and its estate of every kind or type whatsoever, tangible, intangible, real, personal or mixed, whether now owned or hereafter acquired or arising, and whether or not encumbered prior to the Petition Date, wherever located: all property of Debtor's estate within the meaning of section 541 of the Bankruptcy Code; and all proceeds, rents and products of the foregoing (collectively, all of the foregoing property and assets of Debtor and/or its estate, "Property"), which Property includes but is not limited to: (i) all accounts generated post-petition and proceeds thereof, (ii) all pre-petition accounts and proceeds thereof, (iii) all intangibles, (iv) all real property and the improvements and fixtures

7

thereon (the "Land"), (v) all other assets of Debtor including but not limited to inventory and equipment, (vi) any and all cash of Debtor, (vii) all other Property of Debtor and its estate, and (viii) the proceeds of all the foregoing (clauses (i) through (viii) collectively, the "Collateral", provided, that "Collateral" shall not include (collectively, the "Excluded Property") claims and causes of action under sections 502(d), 510, 544, 545, 547, 548, 549, 550 and 553 of the Bankruptcy Code, and any other avoidance actions under Chapter 5 of the Bankruptcy Code (collectively, the "Avoidance Actions) (all such liens and security interests granted to the Lender pursuant to this Order shall be defined as the "Liens").

9. <u>Senior, First Priority Lien on Substantially All Assets</u>. As security for the full and timely payment of the Obligations and in addition to the superpriority administrative expense claim set forth in Section 10 hereof, the Lender is granted pursuant to sections 364(c) a valid, binding, continuing, enforceable, fully-perfected, first priority senior security interest on all Collateral that will constitute a first priority lien in all Collateral, subject only to (i) leased or purchase money-financed equipment of Debtor which was on the Petition Date subject to valid and perfected prepetition security interests; and (ii) the Carve Out (as defined below).

10. <u>Super-Priority Claims</u>. In the event and to the extent that the Collateral does not satisfy in full the Obligations, then, subject to the Carve Out, pursuant to section 364(c)(1) of the Bankruptcy Code, all of the Obligations shall constitute allowed senior administrative expense claims against Debtor with priority over any and all unpaid administrative expenses, diminution claims and all other claims against Debtor, now existing or hereafter arising, of any kind whatsoever (the "Super Priority Claims"), including, without limitation, all other unpaid administrative expenses of the kind specified in sections 503(b) and 507(b) of the Bankruptcy Code, and over any and all administrative expenses or other claims arising under sections 105,

8

326, 328, 330, 331, 503(b), 506(c), 507(a), 507(b), 546, 726, 1113 or 1114 of the Bankruptcy Code, and shall at all times be senior to the rights of Debtor, any successor trustee or any creditor, in the Bankruptcy Case or any subsequent proceedings under the Bankruptcy Code, whether or not such expenses or claims may become secured by a judgment lien or other non-consensual lien, levy or attachment, which allowed claims shall be payable from and have recourse to all pre- and post-petition property of Debtor and all proceeds thereof. The Super Priority Claims granted hereunder shall not include the proceeds or property in respect of (i) any and all proceeds of Avoidance Actions (the "Avoidance Action Proceeds"), whether or not such proceeds or property is recovered from a judgment, settlement or otherwise.

11. Financial Information. The Debtor agrees to provide the Lender and counsel for any statutory committee (the "Committee") appointed in this case the following information:

(i) *Weekly Budget Report.* The Debtor shall report to the Lender and counsel for the the Committee in writing the budgeted amounts as set forth in the DIP Budget as compared to actual amounts on a weekly basis by Tuesday of the following week, commencing on the next Tuesday subsequent to the entry of this Order (the "Weekly Budget Reports"). The Debtor shall provide a narrative explanation of any weekly variances of 5% or more by line item.

(ii) *Access to Information.* The Debtor agrees that any time while Obligations remain outstanding, any financial advisors employed or retained by the Lender or the Committee, shall have reasonable access to and may confer with the Debtor and its management regarding the financial condition of the Debtor, including the above referenced reports.

(iii) *Additional Information.* The Debtor shall also promptly deliver such other information and supporting documentation as the Lender or counsel for the Committee may from

9

time-to-time reasonably request with respect to any or all of the reports described in clauses (i) and (ii) above.

12. <u>DIP Credit Facility Covenants</u>. Debtor shall observe all covenants in this Order at all times prior to the Termination Date.

13. <u>Effectiveness of Credit Facility</u>. From and after the date this Order is entered, the DIP Credit Facility constitutes a valid and binding obligation of the Debtor, enforceable against Debtor in accordance with the terms of this Order for all purposes during the Bankruptcy Case, any subsequently converted case of the Debtor under chapter 7 of the Bankruptcy Code or after the dismissal of the Bankruptcy Case. No obligation, payment, transfer or grant of security under the DIP Credit Facility or this Order shall be stayed, restrained, voidable, avoidable or recoverable under the Bankruptcy Code or under any applicable law (including without limitation, under sections 502(d), 548 or 549 of the Bankruptcy Code or under any applicable state Uniform Fraudulent Transfer Act, Uniform Fraudulent Conveyance Act or similar statute or common law), or subject to any defense, reduction, setoff, recoupment or counterclaim.

14. [RESERVED]

15. <u>No Further Action Required; Perfection of Liens</u>.

(a) The approval of this Order by this Court shall be sufficient and conclusive evidence of the validity, extent, enforceability and perfection of the Liens granted to the Lender. Further, the Lender is hereby authorized, but not required, to file or record any one or more financing statements, trademark filings, copyright filings, patent assignments, real estate mortgages, hypothecs, fixture filings, deeds of trust, notices of lien or similar instruments (collectively, "<u>Notice Filings</u>") in any jurisdiction, or take possession of or control over, or take any other action in order to validate and perfect the liens and security interests granted to the

Lender hereunder. The Liens granted under this Order shall constitute valid and duly perfected security interests and liens, and the Lender is hereby not required to file or record any Notice Filings which otherwise may be required under federal or state law in any jurisdiction, or take any action, including taking possession, to validate and perfect such security interests and liens, and such liens and security interests shall be deemed valid, perfected, allowed, enforceable, non-avoidable and not subject to challenge dispute or subordination. The failure of the Debtor to execute any documentation relating to the enforceability, priority or perfection of the Liens shall in no way affect the validity, perfection or priority of the Liens.

(b) If the Lender, in its sole discretion, elects to file any Notice Filings or otherwise to confirm perfection of such Liens, the Debtor shall cooperate with and assist in such process, the stay imposed under section 362 of the Bankruptcy Code is hereby lifted to permit the filing and recording of a certified copy of this Order or any such Notice Filings, and all such documents shall be deemed to have been filed and recorded at the time of and on the date this Order is entered. Any error, omission or other defect in any such filing shall not affect the validity, enforceability, priority or perfection of any Liens granted under this Order or rights under the DIP Credit Facility.

16. <u>Application of Proceeds of Collateral</u>. The Debtor is authorized and directed to make all payments and all transfers of proceeds from the sale or other disposition of the Collateral (other than in the ordinary course of business) to reduce the Obligations, as applicable, as provided, permitted and/or required under this Order, which payments and transfers shall not be avoidable or recoverable from the Lender under section 547, 548, 550, 553 or any other section of the Bankruptcy Code, or any other claim, charge, assessment, or other liability, whether by application of the Bankruptcy Code, other law or otherwise.

17. <u>Carve Out</u>. In consideration of and in exchange for the agreement that the Debtor shall not seek any further carve-out from the Collateral to fund professional fees and expenses, the Lender consents to a carve out for certain expenses and professional fees incurred during the pendency of this bankruptcy case (the "<u>Carve Out</u>"). For purposes hereof, "<u>Carve Out</u>" shall mean as of the Termination Date (i) accrued but not yet paid fees and expenses of the estate professionals, in the amount of up to $25,000, (ii) accrued but not yet paid fees under 28 U.S.C § 1930 and (iii) up to $7,500 for the accrued but not yet paid fees and expenses of any Chapter 11 or Chapter 7 trustee appointed in this case, which amount shall be entitled to priority over the liens and superpriority administrative expenses granted to the Lender hereunder; and <u>provided</u>, that nothing herein shall constitute a waiver any right of the Lender to object to fees and expenses of estate professionals retained in this case or the fees and expenses of any Chapter 11 or Chapter 7 trustee or to challenge any assertion that any amounts of the fees and expenses remain unpaid.

18. <u>Termination of DIP Credit Facility With Notice</u>.

(a)  Subject to subsection (b), the Lender's obligations to make DIP Loans and the Debtor's right to use loan proceeds under this Order will terminate without any further action by this Court three (3) business days after written notification sent by the Lender to the Debtor, any official committee of unsecured creditors, the U.S. Trustee, and all parties filing a notice of appearance in the Bankruptcy Case, of the occurrence of any of the following (a "<u>Termination Event</u>"):

    (i)    the Debtor's actual performance measured against the DIP Budget exceeds the DIP Budget by 10% in any week or 15% in the cumulative aggregate;

    (ii)    the failure of the Debtor to timely pay all fees due under 28 U.S.C. § 1930;

    (iii)    the failure of the Debtor to pay the DIP Loans as and when due;

608280

(iv) the earlier of (y) the date of the entry of an order of this Court appointing a chapter 11 trustee or an examiner with enlarged powers (beyond those set forth in sections 1104(c) and 1106(a)(3) and (4) of the Bankruptcy Code) for the Debtor; or (z) the date the Debtor files a motion, application or other pleading consenting to or acquiescing in any such appointment;

(v) the failure of the Debtor to materially comply with, keep, observe or perform any of its agreements or undertakings under this Order;

(vi) the failure of the Debtor to consummate a sale of substantially all of its assets pursuant to a Sale Transaction on or before November 25, 2011;

(vii) the closing of a sale of all or substantially all of the Debtor's assets;

(viii) failure of the Debtor to obtain a final order, in form and substance acceptable to the Lender, approving this Order and the Motion on or before October 26, 2011 (the "Final Order"); or

(ix) the Debtor defaults or is breach of any of the terms of this Order.

(b) Unless during such three (3) business day period referenced above in subsection (a), the Debtor cures any Termination Event that is curable (i) all obligations to make DIP Loans or other financial accommodations under the DIP Credit Facility shall automatically terminate, (ii) the Lender shall have the right to file a motion for relief from the automatic stay on an emergency basis for the purpose of exercising rights and remedies in respect of the Liens and Collateral, which rights and remedies shall include all of the rights and remedies of a secured party upon default under the Uniform Commercial Code, including without limitation, the right to declare all Obligations of the Debtor under the DIP Credit Facility to be immediately due and payable.

19. Termination of DIP Credit Facility Without Prior Notice.

(a) The Lender's obligations to make DIP Loans under this Order will automatically terminate without any further action by this Court and a Termination Event shall occur without prior notice upon the occurrence of any of the following (also a "Termination Event"):

13

608280

    (i)       The Bankruptcy Case is dismissed or converted to a proceeding under chapter 7 of the Bankruptcy Code;

    (ii)      this Court suspends the Bankruptcy Case under section 305 of the Bankruptcy Code;

    (iii)     the effective date of a plan of reorganization for the Debtor in the Bankruptcy Case; or

    (iv)     this Order becomes stayed, reversed, vacated, amended or otherwise modified in any respect without the prior written consent of the Lender;

    (v)      an order is entered in the Bankruptcy Case over the objection of the Lender approving financing pursuant to section 364 that would grant an additional security interests or a lien on any Collateral or granting a superpriority administrative claim that is equal or superior to the Super-Priority Claims and the Liens;

    (vi)     the Debtor substantially ceases or changes its business operations;

    (vii)    any challenge to the validity, enforceability, priority or extent of the Lender's liens; or

    (viii)   October 21, 2011 (or such later date to which Lender and the Debtor agree in writing), unless a Final Order approving the Motion (in a form acceptable to Lender in its sole discretion) has been entered by such date, in which event the foregoing date shall be extended to January 31, 2012.

    (b)     Upon the occurrence of a Termination Event described in subsection (a) of this Section 19, the Lender shall have the right to file a motion for relief from the automatic stay on an emergency basis for the purpose of exercising rights and remedies in respect of the Liens and Collateral, which rights and remedies shall include all of the rights and remedies of a secured party upon default under the Uniform Commercial Code, including without limitation, the right to declare all Obligations of the Debtor under the DIP Credit Facility to be immediately due and payable.

20. <u>Modification of Stay</u>. The automatic stay imposed by virtue of section 362 of the Bankruptcy Code is hereby vacated and modified insofar as necessary to permit (i) the Debtor to grant the Liens to the Lender, and (ii) the parties to take any action specifically authorized or contemplated by this Order.

21. <u>Preservation of Rights</u>.

(a)  Notwithstanding any reversal, modification, vacatur or stay of this Order, any Obligations incurred by the Debtor to the Lender prior to the actual receipt of written notice by the Lender of the effective date of such reversal, modification, vacatur or stay shall be governed in all respects by the original provisions of this Order, as applicable, and the Lender shall be entitled to all the rights, remedies, privileges and benefits granted in sections 363(m) and 364(e) of the Bankruptcy Code and this Order with respect to all Obligations.

(b)  Except as expressly provided in this Order, the Liens, the Super-Priority Claims, and the Obligations, and all other rights and remedies of the Lender granted by the provisions of this Order shall survive, and shall not be modified, impaired or discharged by (i) the entry of an order converting the Bankruptcy Case to a case under chapter 7, dismissing the Bankruptcy Case, terminating the joint administration of the Bankruptcy Case or by any other act or omission or (ii) the entry of an order confirming a plan of reorganization in the Bankruptcy Case and, pursuant to section 1141(d)(4) of the Bankruptcy Code. The terms and provisions of this Order shall continue in the Bankruptcy Case, in any superseding chapter 7 Bankruptcy Case under the Bankruptcy Code, and the Liens, the Super-Priority Claims, the Obligations, and all other rights and remedies of the Lender granted by the provisions of this Order shall continue in full force and effect.

608280

22. <u>Survival of Rights</u>. Notwithstanding the occurrence of a Termination Event, all of the rights, remedies, benefits and protections provided to the Lender under this Order shall survive such Termination Event.

23. <u>No Competing Liens</u>. Upon entry of this Order, the Debtor, except as authorized hereunder, shall not grant liens on, or security interests in the Collateral to any other party other than the Lender pursuant to section 364 of the Bankruptcy Code or otherwise without the express written consent of the Lender, which consent may be withheld by the Lender in its sole and absolute discretion.

24. <u>No Third Party Beneficiaries</u>. No rights are created hereunder for the benefit of any third party, any creditor, or any direct, indirect or incidental beneficiary.

25. <u>Headings</u>. Section headings used herein are for convenience only and are not to affect the construction of or to be taken into consideration in interpreting this Order.

26. <u>Waiver of any Applicable Stay</u>. Any applicable stay (including, without limitation, under Bankruptcy Rule 6004(h)) is hereby waived and shall not apply to this Order.

27. <u>Notices</u>. The Debtor shall, on or before October 13, 2011 serve by overnight courier copies of a notice of entry of this Order, together with a copy of this Order and a proposed Final Order, to (i) the parties having been given notice of the emergency hearing, (ii) any other party which has filed a request for special notice with this Court and served such request on Debtor's counsel, (iii) counsel for any statutory committee, and (iv) all creditors who, as of the Petition Date, have a recorded UCC-1 financing statement on personal property of the Debtor. The notice of approval of this Order shall state that any party in interest objecting to the approval of the proposed Final Order shall file written objections with the United States Bankruptcy Court Clerk for the District of Massachusetts no later than October 24, 2011, which

objections shall be served so that the same are received on or before 4:00 P.M. EST of such date by the United States Trustee and the following counsel:

    i. Counsel to the Debtor:

    John C. Elstad, Esquire
    MURPHY & KING P.C.
    One Beacon Street
    Boston, MA 02108
    Telephone 617-226-3426
    Facsimile 617-423-0498

    ii. Counsel to the Lender:

    Kevin J. Walsh, Esquire
    Mintz, Levin, Cohn, Ferris, Glovsky and Popeo, P.C.
    One Financial Center
    Boston, MA 02111
    Telephone (617) 542-6000
    Facsimile (617) 542-2241

28. The Final Hearing to consider the Motion and Final Order shall be held on **October 26, 2011 at 10:00 a.m.** before the Honorable Joan N. Feeney, United States Bankruptcy Judge.

SO ORDERED by the Court this 11th day of October, 2011.

*/s/ Joan N. Feeney*
UNITED STATES BANKRUPTCY JUDGE

608280