# UNITED STATES BANKRUPTCY COURT
# DISTRICT OF MASSACHUSETTS
# (Eastern Division)

| | |
|---|---|
| In re: <br><br> **FRC, LLC,** <br><br> Debtor. | **Chapter 11** <br><br> **Case No. 11-19466** |

## ORDER ESTABLISHING SALE PROCEDURES

FRC, LLC (the "Debtor"), a debtor and debtor-in-possession in the above captioned case, having filed its *Motion by Debtor for Approval of (A) Sale Procedures, (B) Break-up Fee and Expense Reimbursement Provisions and (C) (1) Procedures for Assumption and Assignment of Executory Contracts and Unexpired Leases, and (2) Form of Notice of Contract Assumption and Assignment and Cure Amounts in Connection with the Sale of Certain of the Debtor's Assets Free and Clear of All Liens, Claims, Interests and Encumbrances* (the "Sale Procedures Motion") seeking the approval of sale procedures with respect to the Debtor's proposed sale of certain of the Debtor's assets to Asset International, Inc. ("Purchaser"); and the Court having considered the Sale Procedures Motion and all pleadings associated with that motion; and upon the arguments of counsel and the evidence presented at the hearing on the Sale Procedures Motion; and after due deliberation and sufficient cause therefore,

#609129

**THIS COURT HEREBY FINDS THAT:**

A.  Capitalized terms not otherwise defined in this order shall have the respective meanings attributed to such terms in the Sale Procedures Motion.

B.  This Court has jurisdiction over the Bankruptcy Case pursuant to 28 U.S.C. §§ 1334(a) and 157(b)(1). Venue of the Bankruptcy Case in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

C.  The Debtor has filed the *Debtor's Motion for Order (I) Authorizing the Sale of Certain of the Debtor's Assets Free and Clear of All Liens, Claims, Interests and Encumbrances, (II) Authorizing the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases in Conjunction Therewith and (III) for Related Relief* (the "Sale Motion"). The Sale Motion seeks the approval of the Asset Purchase Agreement between the Debtor and Purchaser (the "APA") that contemplates the sale, as a going concern, of certain of the Debtor's assets (the "Acquired Assets") related to its financial industry research report business, as more fully described in the Sale Motion and the APA. The Sale of the Acquired Assets will be by private sale free and clear of all liens, claims and interests.

D.  The purchase price for the Acquired Assets pursuant to the APA is $500,000, subject to adjustments as set forth in the APA (the "Purchase Price"). Purchaser has submitted a $50,000 deposit (the "Deposit") in escrow with Debtor's counsel.

E.  The APA provides that Purchaser is entitled to a break-up fee of three percent (3%) of the Purchase Price (the "Break-Up Fee") plus reimbursement of up to three percent (3%) of the Purchase Price of Purchaser's actual out-of-pocket expenses incurred in connection with the transactions contemplated by the APA, including negotiating the APA and the transactions contemplated by the APA, and conducting due diligence related to the APA and the Sale (the

#609129                                       2

"Expense Reimbursement"). The APA provides that the Purchaser shall receive the Break-Up Fee and the Expense Reimbursement in the event that the Debtor consummates a sale of the Acquired Assets to the proponent of a Competing Bid (as defined below) (an "Alternative Transaction").

F.  Purchaser has expended, and likely will continue to expend considerable time, and substantial money and energy pursuing the sale and has engaged in extended and lengthy good faith negotiations. The APA and closing of the transactions contemplated thereby are the culmination of these efforts.

G.  The Break-Up Fee and Expense Reimbursement provisions were a material inducement for, and a condition of, Purchaser's entry into the APA. Purchaser is unwilling to act as the stalking-horse bidder without the Break-Up Fee and Expense Reimbursement. By having Purchaser as a stalking-horse bidder, much of the due diligence, contract negotiation, and other work necessary to submit a bid for the Acquired Assets will have been completed. This will shorten the time and cost required for prospective bidders to submit a Competing Bid and will therefore promote such bids. The sale of the Acquired Assets as a going concern without a stalking-horse bidder would be more time consuming, more expensive, and would likely lead to fewer (or no) competitive bids. In addition, Purchaser is unwilling to proceed with the Sale and close the APA without Bankruptcy Court approval of the Break-Up Fee and the Expense Reimbursement. The approval of the Break-Up Fee and Expense Reimbursement will therefore benefit the Debtor's bankruptcy estate. Break-Up Fees and Expense Reimbursements are common in sales of this type and complexity.

H.  The Break-Up Fee was negotiated by the parties in good faith and at arms' length, and is fair and reasonable in view of, among other things, (a) the intensive analysis, due

#609129                                3

diligence investigation, and negotiation undertaken by Purchaser in connection with the Sale, and (b) the fact that Purchaser' efforts have increased the chances that the Debtor will receive the highest and best offer available for the Acquired Assets by establishing a bid standard or minimum for other bidders, placing the property of the Debtor's estate in a sale mode thereby potentially attracting other bidders to the auction and serving as a catalyst for other potential or actual bidders for the Acquired Assets, to the benefit of the Debtor, its estate, its creditors and all other parties in interest.

I. Notice of the Sale Procedures Motion was appropriate under the circumstances, and no further notice is required.

J. The Court has scheduled hearings on the Sale Motion on November 18, 2011 at 11:00 a.m. (the "Sale Hearing").

K. Good and sufficient cause exists for the entry of this Order.

**NOW THEREFORE, it is HEREBY ORDERED, ADJUDGED AND DECREED AS FOLLOWS:**

1. The Sale Procedures Motion is hereby granted in its entirety.

2. The following Sale procedures shall apply to the sale of the Acquired Assets:

    a. Any competing bid shall be deemed to qualify as a competing bid (a "Competing Bid") only if: (i) made upon terms and provisions set forth in the APA (with only non-material modifications thereto) for the purchase of all of the Acquired Assets and assumption of all of the Assumed Contracts described in the APA, and (ii) for a cash amount of at least ten percent (10%) more than the Purchase Price.

    b. A Competing Bid must contain a case caption as set forth above and be filed, in accordance with the applicable Federal and local Rules of Bankruptcy Procedure,[1] with the United States Bankruptcy Court for the District of Massachusetts, John W. McCormack Post Office and Courthouse, 5 Post Office Square, Suite 1150, Boston, MA 02109-3945,

---

[1] Including, without limitation, the restrictions on facsimile filings pursuant to MLBR 5005-4.

#609129                                    4

on or before 4:30 p.m. on November 16, 2011 (the "Bid Deadline"). A Competing Bid must be served on counsel for the Debtor, counsel for Asset International, Inc., counsel for the Official Committee of Unsecured Creditors and the Office of the United States Trustee (collectively the "Service Parties").

c.   A Competing Bid must be accompanied by an executed asset purchase agreement in the form of the APA with only such non-material changes to the terms set forth in the APA as are acceptable to the entity submitting the Competing Bid, including a purchase price expressed in U.S. Dollars and accompanied by all exhibits and schedules thereto (a "Competing APA").

d.   The Competing Bid must be accompanied by a marked copy of the Competing APA showing changes from the APA.

e.   A Competing Bid must not be subject to contingencies for financing or the completion of due diligence.

f.   Any bidder submitting a Competing Bid must deliver a cash deposit to counsel for the Debtor at the time of submission of such bid. The cash deposit shall be in the form of a certified check or wire transfer of immediately available funds, and must be received on or before the Bid Deadline. The deposit delivered by a competing bidder will be forfeited in the event that such competing bidder is the successful bidder and fails to close on the sale through no fault of the Debtor. The deposit shall be $50,000.

g.   Any party submitting a Competing Bid shall demonstrate to the Debtor's satisfaction that: (i) it is financially able to consummate the transactions contemplated by the Competing Bid, in cash in the amount of the Competing Bid, which ability may be demonstrated by submission of bank statements, current audited or unaudited financial statements, or other reasonable evidence, or, if the bidder is an entity formed for the purpose of acquiring the assets in question, current audited or unaudited financial statements or other reasonable evidence of the financial capability of the equity holders of the bidder, (ii) it is able to perform under all assumed contracts and/or leases, (iii) it is able to fulfill any remaining obligations under the Competing APA, and (iv) it has written evidence of a financing commitment sufficient to permit the consummation of the transactions in question.

h.   Any party submitting a Competing Bid shall execute a confidentiality agreement that is, in form and substance, substantially the same as the confidentiality agreement executed by Purchaser.

#609129                                         5

    i. An auction for the Acquired Assets shall be held only if there is a Competing Bid. In the absence of a Competing Bid, the Debtor shall seek approval of the Sale to Purchaser, pursuant to the APA.

    j. Bidding at any auction for the Acquired Assets shall be conducted by the Court immediately prior to the Sale Hearing in accordance with procedures to be announced at the time of the auction.

    k. Only persons that have submitted a timely, qualified Competing Bid may participate in any auction.

    l. Subsequent overbids shall be in increments of at least $10,000 greater than the initial overbid or any subsequent overbid. Purchaser shall be entitled to improve its offer at any auction for the Acquired Assets.

3. The following procedures shall apply with respect to executory contracts and/or unexpired leases that are proposed to be assumed and assigned pursuant to the APA or any Competing APA of a successful Competing Bid, as applicable (collectively the "Assumed Contracts"):

    a. Any interested party seeking to object to the assumption and assignment to any bidder, or to the validity of the cure amount, if any, as set forth in the Notice of Sale and Assumption and Assignment of Contracts (as defined below), or to otherwise assert that any amounts, defaults, conditions, or pecuniary losses (including accrued but not yet due obligations) that must be cured or satisfied under any of the Assumed Contracts in order for such contract or lease to be assumed and/or assigned (collectively, a "Cure Obligation"), must file and serve an objection (a "Assumption/Assignment Objection") so that such Assumption/Assignment Objection is docketed and received by the Service Parties not later than the Bid Deadline (the "Assumption/Assignment Objection Deadline").

    b. An Assumption/Assignment Objection must set forth with specificity any and all Cure Obligations or conditions which such party asserts must be cured or satisfied in connection with the assumption and assignment of such Assumed Contract; provided, however, that any party to an Assumed Contract shall retain the right to object solely with respect to adequate assurance of future performance until the Sale Hearing only if such objection was raised in an Assumption/Assignment Objection on or prior to the Assumption/Assignment Objection Deadline. An Assumption/Assignment Objection shall set forth the cure amount that the objector asserts is due, the specific types and dates of the alleged defaults,

#609129      6

pecuniary losses and conditions to assumption and assignment, and the support therefor, and all other objections to assumption and assignment.

    c.    Unless an Assumption/Assignment Objection is filed and served by the Assumption/Assignment Objection Deadline, all interested parties who have received actual notice of these procedures shall be deemed to have waived and released any right to assert a Cure Obligation and to have otherwise consented to the assumption and assignment and shall be forever barred and estopped from asserting or claiming against the Debtor, the buyer of the Acquired Assets, or any other assignee of the relevant Assumed Contract that any additional amounts are due or monetary or non-monetary defaults exist, or conditions to assignment must be satisfied, under such contract. Upon entry of the Sale Approval Order and Closing of the sale of the Acquired Assets, each non-debtor party to each Assumed Contract will be required to fully perform all duties and obligations arising under such Assumed Contract, according to its terms.

    d.    Hearings with respect to any Assumption/Assignment Objections may be held (i) at the Sale Hearing, or (ii) at such other date as the Court may designate; provided that, as to objections to assumption and assignment based solely on the amount of the proposed monetary cure, the subject Assumed Contract may be assumed and assigned prior to resolution of any Assumption/Assignment Objection if the monetary cure amount asserted by the objecting party (or such lower amount as may be fixed by the Court) is deposited by the Debtor to be held in a segregated account maintained by Debtor's counsel or such other person as the Court may direct pending further order of the Court or mutual agreement of the parties.

    e.    The Debtor proposes to serve the Notice of Sale, Assumption and Assignment of Contracts and/or Unexpired Leases (as defined below) on all parties to the Assumed Contracts.

4.    The proposed form of notice (the "Notice of Sale, Assumption and Assignment of Contracts and/or Unexpired Contracts") attached to the Sale Procedures Motion as <u>Exhibit B</u> is hereby approved, and the Debtor is authorized to serve, via First Class U.S. mail, the Notice of Sale, Assumption and Assignment of Contracts and/or Unexpired Leases on all parties to Assumed Contracts, and no other notice is necessary or required with respect to the assumption and assignment of the Assumed Contracts. The Debtor shall file with the Court and serve upon any affected parties an updated <u>Exhibit B</u>, if Assumed Contracts have been added or deleted

#609129                                                  7

from the list of Assumed Contracts, seven (7) days prior to the date set for filing objections to the Sale Motion. Any counterparty to an Assumed Contract that receives notice of the assumption and assignment of a contract pursuant to an updated Exhibit B shall file and serve an Assumption/Assignment Objection, if any, by the Assumption/Assignment Objection Deadline.

5. The Debtor shall pay the cure amounts shown in Exhibit B to the contract counterparty or satisfy any Cure Obligation as determined by the Court prior to the assumption and assignment of any Assumed Contract.

6. If the party submitting the highest and best offer fails to close on the sale of the Acquired Assets, the Debtor is authorized, but not directed, to sell the Acquired Assets to the party submitting the next highest or best offer without the necessity of further Court approval; provided that nothing in this order shall modify or affect the ability of the Debtor or Purchaser to terminate the APA according to its terms.

7. In the event the Debtor and/or the party who submits the highest and best bid for the Acquired Assets fails to close on the sale, and such failure constitutes a breach of the APA or Competing APA (as applicable) by such party, then such party's Deposit shall be forfeited to the Debtor and the Debtor shall retain same as liquidated damages; such retention of the Deposit by the Debtor shall be the Debtor's sole and exclusive remedy in the event of any such breach of the APA or Competing APA (as applicable) by such party.

8. The Debtor is authorized to pay the Break-Up Fee and the Expense Reimbursement, in the event that an Alternative Transaction is consummated. Purchaser' right to the Break-Up Fee and Expense Reimbursement is hereby deemed to be an allowed administrative expense claim against the Debtor under Section 503(b) of the Bankruptcy Code. The Debtor is authorized and directed to immediately pay the Break-Up Fee and Expense

Reimbursement within one (1) business day of the consummation of an Alternative Transaction, without any other or further notice or order of this Court.

9. In the event that an Alternative Transaction is consummated, Purchaser's deposit, or in the event that any Competing Bid is not the winning bid, the deposit of the proponent of such unsuccessful Competing Bid, shall be released to the Purchaser or the proponent of an unsuccessful Competing Bid as applicable without further notice or order of the Court (and the automatic stay under Section 362 of the Bankruptcy Code is hereby waived to the extent necessary to permit such release and any actions that may be necessary or proper for any party to take to effectuate such release).

10. This Court shall retain jurisdiction over any matters related to or arising from the implementation of this Order, including to (i) interpret, implement and enforce the provisions of this Order and the APA (including, without limitation, the provisions related to the Break-Up Fee and Expense Reimbursement), any subsequent amendments to, modifications of, consents relating to or waivers thereof and any related documents; (ii) enforce Purchaser' rights with respect to its administrative expense claims granted hereunder; and (iii) adjudicate all matters concerning the Sale Procedures, the Sale Motion, this Order or the APA.

11. The Debtor is hereby authorized and empowered to take such steps, expend such sums of money and do such other things as may be necessary to implement and effect the terms and requirements established by this Order.

_____
UNITED STATES BANKRUPTCY JUDGE

Dated: October 19, 2011

#609129